FILED
Gary Harrison
CLERK, SUPERIOR COURT
5/5/2023 4:47:08 PM
BY: ALAN WALKER /s/
DEPUTY
C20232042
HON. CYNTHIA T. KUHN

**UDALL LAW FIRM, LLP**
ATTORNEYS AT LAW
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353
ccline@udalllaw.com
cmeynard@udalllaw.com

Craig Cline SBN 020412, PCC# 65448
Cassandra Meynard SBN 26316, PCC# 66135
*Attorneys for Plaintiff*

C20232042

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| Pamela Ruggeroli, a single woman, | NO. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Residential Real Estate Council, a foreign nonprofit corporation, and Alex Milshteyn, an individual, | *Assigned to*: The Hon. |
| Defendant. | |

For her Complaint, Plaintiff Pamela Ruggeroli alleges as follows:

### PARTIES

1. Plaintiff Pamela Ruggeroli ("Plaintiff") is a resident of Pima County, Arizona.

2. Defendant Residential Real Estate Council ("Defendant" or "RRC") is a foreign nonprofit corporation registered to do business in Arizona and doing business in Pima County, Arizona.

3. Defendant Alex Milshteyn ("Milshteyn") is a single man living in Michigan.

4. Defendant caused events giving rise to this action to take place in Pima County.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action and over the parties hereto and venue in Pima County is proper pursuant to A.R.S. § 12-401 as Defendant resides without the state and Plaintiff resides in Pima County.

## FACTUAL ALLEGATIONS

6. Plaintiff is a REALTOR® and a Certified Residential Specialist (CRS) in Tucson, AZ.

7. Defendant is foreign nonprofit corporation of approximately 28,000 members across the globe who are REALTORS® and of which a large percentage are also CRS.

8. In or around November 2019, Holli Woodward ("Woodward"), the then-current First Vice President of Defendant's Board of Directors ("the Board"), asked Plaintiff to apply for the office of 2021 First Vice President of the Board.

9. Plaintiff's 2020 election campaign was based on "Members First." Her campaign was successful and she was elected by the members to the Board.

10. When a member of RRC is elected to the Board, they first hold office as First Vice President and enter a cycle of leadership that automatically progresses the following year to President Elect, President, and finally Immediate Past President.

11. Plaintiff took office in January 2021 as First Vice President. Per Defendant's bylaws, she was also Chair of the Finance Committee.

12. In carrying out her duties, Plaintiff became aware of irregularities in the financial statements prepared by Defendant's Chief Financial Officer ("CFO") at the time.

13. In 2021, Milshteyn was President of the Board.

14. In November 2021, upon information and belief, the CEO Lana Vukovljak told Milshteyn that a member of Defendant's staff (hereafter, "Staff Member") had filed a sexual harassment complaint with Defendant about an alleged act performed by Plaintiff's partner Mr. Savard ("Savard") during the RRC Awards Dinner/Dance during the November 2021 National Association of REALTORS ("NAR") Annual Conference in San Diego, California.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

15. The next day, Milshteyn made a false and vulgar allegation to Plaintiff about an act he heard Savard had made toward the Staff Member at the RRC Awards Dinner/Dance.

16. Plaintiff had been with Savard during the entire Dinner/Dance and knew the allegation was untrue.

17. Plaintiff told Milshteyn that his vulgar allegation was untrue.

18. A few days later, Milshteyn wrote to Plaintiff to state that Savard would no longer be allowed to attend Defendant's events.

19. A short time later, the Staff Member who allegedly made the complaint told Plaintiff that she had not made such a complaint, that CEO Vukovljak's allegation about Savard was untrue, and that CEO Vukovljak was fabricating the allegation to get Plaintiff off the Board due to her investigation into Defendant's financial statements and membership counts.

20. Rather, the Staff Member told Plaintiff, she had made a complaint about a different conference attendee who had harassed her at an the RRC Expo booth, but that CEO Vukovljak did not document or investigate the claim in violation of Defendant's policies and procedures.

21. The Staff Member also complained to Plaintiff that CEO Vukovljak created a bullying and harassing environment in the workplace and discussed other human resources-related concerns that she had about Defendant's organization.

22. Upon information and belief, Defendants never investigated the allegations that CEO Vukovljak claimed the Staff Member made against Savard.

23. Plaintiff later confirmed with Defendant's Interim CEO/CFO that they had no documentation of any such allegation against Savard.

24. In January 2022, Woodward became President of the Board.

25. In Spring 2022, the Board hired a third party to perform an internal audit of Defendant's organizational structure.

26. In May 2022, the Board chose not to renew the CEO Vukovljak's contract.

27. In Spring of 2022, Woodward told Plaintiff that she could bring Savard to an RRC reception at a conference organized by a separate entity, the NAR Political Action Committee President's Circle Conference in the Bahamas.

28. Despite this permission, Plaintiff did not bring or invite Savard to the RRC reception that took place during the NAR Political Action Committee President's Circle Conference in the Bahamas.

29. In the Summer of 2022, Woodward, past President Milshteyn, and First Vice President Tricia Nekota had a leadership team meeting with RRC Counsel Paula Goedert ("Goedert") without advising or including Plaintiff who was President-elect at the time.

30. In August 2022, the Staff Member told Plaintiff that she was filing a complaint about the Human Resources Department and the Interim CEO.

31. In September 2022, the Staff Member called Plaintiff again to tell her that Defendant was denying her request for medical leave and that she was afraid she would be terminated if she took medical leave.

32. In October 2022, the CFO revealed to the Board the true financial status of the Council. Although funds were not missing, they had been manipulated to portray a more robust financial status than was the case.

33. On November 4, 2022, new CEO Jeff Hornberger terminated the Staff Member.

34. On November 7, 2022, RRC counsel Goedert, who works at the pleasure of the Board, emailed Plaintiff to tell her that Savard was not allowed to attend Plaintiff's installation as President of the Board. It is unclear on what authority Ms. Goedert made this assertion.

35. On November 11, 2022, Plaintiff was installed as President of the Board and officially took office on January 1, 2023.

36. In March 2023, Plaintiff and Savard attended the 2023 convention of the NAR Political Action Committee President's Circle Conference in Cancun, Mexico.

37. Defendant held a reception for RRC members and their guests who were present at the Cancun conference.

38. Plaintiff, in her capacity as President, arrived thirty minutes prior to the reception with 2023 First Vice President Vivian Macias to greet the members and their guests at Defendant's reception. Milshteyn and CEO Hornberger were already present.

39. At some point during the reception, Plaintiff noticed that Savard had come to the RRC reception as the guest of 5 other RRC members and their spouses who had all arrived together and had encouraged Savard to come as their guest.

40. Plaintiff did not invite Savard to the reception nor did she visit him during the fifteen or so minutes that he was present at the reception.

41. On information and belief, during and for at least one week after the NAR Political Action Committee President's Circle Conference in Cancun, Mexico, Milshteyn and RRC began making false and defamatory statements about Plaintiff related to Savard's presence at the reception and Plaintiff's position on the Board.

42. Upon return from the conference, Defendant RRC had a leadership team call with Plaintiff during which President Elect Tricia Nekota ("Nekota") read Plaintiff a pre-written statement accusing Plaintiff of bringing Savard to the RRC reception held during the 2023 convention of the NAR Political Action Committee President's Circle Conference in Cancun, Mexico. Nekota gave Plaintiff the option to resign, remain as President to chair three Board meetings only, or take the matter up with the Board.

43. On March 8, 2023, Plaintiff received a call from Board of Director Debra Beagle regarding an email she had received about a Special Meeting without the required notice that was being held by the Board on March 10, 2023. Plaintiff had not received this email.

44. On March 9, 2023 Defendant's CEO Jeff Hornberger sent Plaintiff an email inviting her to attend a Special Meeting twenty minutes after the meeting began.

45. Plaintiff was not properly notified of the Special Meeting and was not given an opportunity to vote or to waive notice of the Special Meeting in violation of RRC's bylaws.

46. On March 10, 2023, Plaintiff's attorney received an email from Goedert stating that the Board had voted to restrict all of Plaintiff's duties and responsibilities as

-5-

1 President including removing all of her travel and all of her speaking engagements on behalf
2 of RRC, telling Plaintiff that such duties would be transferred to President Elect Nekota.

3     47. Upon information and belief, Nekota had not recused herself and had not
4 abstained from voting despite an apparent conflict of interest.

5     48. Goedert told Plaintiff she would have to cancel her scheduled presentations to
6 the Tucson Association of Realtors and the Arizona Association of REALTORS®.

7     49. The Board did not tell Plaintiff the reason for the removal of her duties, but
8 implied that it was because they believed Plaintiff brought Savard to the RRC reception that
9 took place during the NAR Political Action Committee President's Circle Conference in
10 Cancun Mexico.

11     50. Plaintiff provided the Board with four written statements of RRC members who
12 clarified that they were the ones that had invited and brought Savard to the reception as their
13 guest. Plaintiff did not invite Savard and, in fact, asked him not to attend the RRC reception.

14     51. After Plaintiff notified the Board that they had not properly noticed the March
15 10, 2023, Special Meeting, Defendant called another Special Meeting on March 27, 2023.

16     52. Plaintiff was advised that the now-terminated Staff Member was threatening
17 legal action against Defendant for its failure to follow its employment policies and
18 procedures.

19     53. Goedert and Hornberger falsely stated to Plaintiff and the Board that the sole
20 basis for the former Staff Member's claim was the alleged act by Savard that purportedly
21 occurred in San Diego, California in November 2021.

22     54. During the Special Meeting, Milshteyn (who was no longer a board member
23 and who had neither witnessed the alleged act by Savard nor investigated any allegation
24 against Savard) repeated to the Board the vulgar and false allegations against Savard made by
25 CEO Vukovljak and falsely told the Board that the allegations by the former Staff Member
26 were solely based on actions of Savard.

27     55. Milshteyn also falsely told the Board that he had been present at a bar and had
28 needed to protect RRC members and staff from Savard.

-6-

56. Outside the presence of Plaintiff, the Board voted to remove Plaintiff as President and member of the Board.

57. Once again, on information and belief, during this vote, President Elect Nekota did not recuse herself or abstain from the vote.

58. Defendant announced Plaintiff's removal from the Board to the membership, which loudly protested and complained about the Board's actions on social media.

59. On March 30, 2023, RRC falsely published a statement to its approximately 28,000 members that Plaintiff was removed because of "her actions."

60. Defendant chose to shift blame for its own self-imposed legal troubles, and instead focused on Plaintiff by falsely implying to its membership that Plaintiff was to blame for Defendant's own dysfunction and internal issues.

61. Defendants' statements were false.

62. Defendant RRC made false statements that were published to the RRC members and refused to retract them upon request.

63. The false and defamatory statements were republished to the almost two million members of NAR.

64. Defendants' false statements affected Plaintiff's reputation personally and professionally.

65. Defendant RRC continues to publish false and defamatory statements about Plaintiff. For example, Board member Addie Owens recently told an RRC member that Plaintiff had been removed because of "sexual harassment," implying that Plaintiff had sexually harassed another.

66. On information and belief, Milshteyn continues to publish false and defamatory statements about Plaintiff.

67. Defendants' false and malicious defamatory statements have caused actual harm to Plaintiff.

## COUNT ONE
### (Defamation Per Se)

68. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

69. Defendants made defamatory statements about Plaintiff concerning alleged actions she took in her professional capacity.

70. These false statements impeached Plaintiff's honesty, integrity, virtue and reputation within the real estate community – a community of which Plaintiff has been an active and integral member and leader for over twenty years.

71. Defendants' statements were per se defamatory.

72. As a result of the defamation per se, Plaintiff's damages are presumed.

73. Defendants' defamation was carried out with an evil hand guided by an evil mind, with the intent to defame Plaintiff and with a conscious disregard of an unjustifiable risk of significant harm to Plaintiff such that Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT TWO
### (Defamation)

74. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

75. Defendants published false and defamatory statements concerning Plaintiff.

76. Defendants' statements harmed Plaintiff's reputation for honesty, integrity, and virtue, and otherwise brought Plaintiff into disrepute.

77. Defendants knew these statements to be false or acted with reckless disregard as to the truth or falsity of the statements. Specifically, Defendants continued to publish the statements after Plaintiff offered evidence establishing that Plaintiff had not committed any malfeasance whatsoever.

78. Despite knowing or having reckless disregard for the truth, Defendants published further false and defamatory statements regarding Plaintiff.

79. Defendants' false and defamatory statements about Plaintiff caused her to be damaged in an amount to be proven at trial.

## COUNT THREE
### (False Light/Invasion of Privacy)

80. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

81. Defendants published false statements about Plaintiff with knowledge of the statements' falsity, or with reckless disregard for the truth of the statements.

82. Defendants' false statements were those that a reasonable person would find highly offensive.

83. Plaintiff was damaged as a result.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants jointly and severally as follows:

A. For damage to reputation and lost earnings in an amount to be determined at trial;

B. For punitive damages;

C. For such other relief as the Court may deem appropriate.

DATED this 5th day of May, 2023.

UDALL LAW FIRM, LLP

By *s/ Cassandra Meynard*
Cassandra Meynard
Craig Cline
*Attorneys for Plaintiff*

-9-