**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Ruggeroli, | No. CV-23-00259-TUC-JAS |
| Plaintiff, | **ORDER** |
| v. | |
| Residential Real Estate Council and Alex Milshteyn. | |
| Defendants. | |

Pending before the Court is a Motion to Dismiss by Defendant Residential Real Estate Council ("RRC") for Lack of Personal Jurisdiction and a Failure to State a Claim (Doc. 11), Plaintiffs' Response (Doc. 12), and RRC's Reply (Doc. 13). Also before the Court is Defendant Alex Milshteyn's Motion to Dismiss on the same grounds (Doc. 17).[1] Plaintiff brings common law claims for defamation *per se*, defamation *per quod*, and false light invasion of privacy. Defendants move this Court to dismiss all Plaintiff's claims for a lack of personal jurisdiction under the Federal Rules of Civil Procedure 12(b)(2) and for a failure to state a claim upon which relief can be granted under Rule 12(b)(6). For the reasons set forth in this Order, RRC's 12(b)(2) motion is denied, and its 12(b)(6) motion is granted in part and denied in part. Milshteyn's 12(b)(2) motion is granted and Milshteyn shall be removed from this action as a defendant.

---

[1] Plaintiff filed no response to Milshteyn's motion and the Parties submitted no stipulation indicating briefing on the second motion was unnecessary. The Court notes, that some of the issue raised in both motions are identical; to that extent, any ruling on RRC's motion (Doc. 11) is binding law of the case for Milshteyn's motion (Doc. 17). Where the motions do not overlap, the Court treats new arguments in Milshteyn's motion as unopposed. *See* Part II B of this Order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I. Factual Background**

Plaintiff Pamela Ruggeroli is a Realtor and Certified Residential Specialist in Tucson, Arizona. **Compl., Doc. 1–5 at ¶¶1, 6.** She is a former president of the board for Defendant RRC, a nonprofit corporation with approximately 28,000 Realtor members. *Id.* **at ¶¶7, 35.** RRC is an out-of-state corporation with its principal place of business in Illinois but is registered to do business in Arizona and conducts business there. *Id.* **at ¶2.**

During Plaintiff's tenure as vice president of RRC in 2021, its then CEO informed then Board President, Defendant Alex Milshteyn, that one of RRC's staff members filed a sexual-harassment complaint against Plaintiff's partner, Mr. Savard. *Id.* **at ¶¶11–14.** Mr. Milshteyn relayed the claim against Mr. Savard to Plaintiff. *Id.* **at ¶15.** The staff member later contacted Plaintiff to notify her that she did not make a sexual-harassment claim related to Mr. Savard. *Id.* **at ¶19.** Nonetheless, in 2022 when Plaintiff was president-elect, RRC counsel Ms. Paula Goedert instructed Plaintiff that Mr. Savard was barred from attending Plaintiff's induction ceremony as president of the board. *Id.* **at ¶34.** Plaintiff assumed her position as president of the board of the board in January 2023. *Id.* **at ¶35.**

During her term as president of RRC in March 2023, Plaintiff and Mr. Savard attended a National Association of Realtors ("NAR") conference in Cancun, Mexico. *Id.* **at ¶36.** At the Cancun conference, Plaintiff attended a RRC reception for its members and guests. *Id.* **at ¶¶37–38.** Plaintiff did not invite Mr. Savard to attend the reception. *Id.* **at ¶40.** Despite this, Mr. Savard attended the reception along with five other RRC members and their spouses who had encouraged him to attend. *Id.* **at ¶39.** While Mr. Savard was at the reception, Plaintiff did not interact with him. *Id.* **at ¶40.**

Upon returning from the conference in Cancun, RRC board members accused Plaintiff of bringing Mr. Savard to the reception. *Id.* **at ¶42.** Board members then held a meeting about which they did not notify Plaintiff until after it began. *Id.* **at ¶44.** The next day, the board voted to restrict all of Plaintiff's responsibilities and duties as president. *Id.* **at ¶46.** Inferring that the board members did so because they believed Plaintiff had

1    brought Mr. Savard to the reception, Plaintiff provided the board members with four

2    written statements from RRC members stating they, not Plaintiff, invited Mr. Savard. *Id.*

3    **at ¶¶49–50.** The Board then voted to remove Plaintiff from her position as president. *Id.*

4    **at ¶56.** RRC published a statement to its approximately 28,000 members that Plaintiff

5    was "removed because of her actions." *Id.* **at ¶59.**

6          Following the announcement of Plaintiff's removal, RRC refused to retract its

7    statement. *Id.* **at ¶62.** At some time after RRC removed Plaintiff from her position, an

8    RRC board member told another RRC member that Plaintiff had been removed because

9    of "sexual harassment." *Id.* **at ¶65.**

10         Plaintiff is now suing RRC and Milshteyn for defamation *per se*, defamation *per*

11   *quod*, and false light invasion of privacy. *Id.* **at ¶¶68–83.** Defendants have moved to

12   dismiss the claims under Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(6). **RRC Motion to**

13   **Dismiss, Doc. 11 at ¶1; Milshteyn Motion to Dismiss, Doc. 17 at ¶1.**

## II. Discussion

### A. Personal Jurisdiction as to RRC

16         The District of Arizona may exercise personal jurisdiction over Defendant RRC.

17         Rule 12(b)(2) of the Federal Rules of Civil Procedure allows dismissal when the

18   court lacks personal jurisdiction over any or all named defendants. When considering a

19   motion to dismiss for lack of personal jurisdiction, the court takes as true "uncontroverted

20   material" in the Complaint and resolves in the plaintiff's favor "conflicts between the

21   facts contained in the parties' affidavits." *Doe v. WebGroup Czech, a.s.*, 93 F.4th 442,

22   448 (9th Cir. 2024) (quoting *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019

23   (9th Cir. 2002)).

24         A district court has personal jurisdiction over a defendant "who is subject to the

25   jurisdiction of a court of general jurisdiction in the state where the district court resides."

26   Fed. R. Civ. P. 4(k)(1)(A). The plaintiff has the burden to demonstrate the court may

27   lawfully exercise personal jurisdiction over the defendant. *Rio Props*, 284 F.3d at 1019.

28   To establish that the court can exercise personal jurisdiction over the defendant, the

1 plaintiff must demonstrate that the forum state's long-arm statute "confers personal
2 jurisdiction over" the defendant and that exercising personal jurisdiction over the
3 defendant adheres to due process. *Id.* The forum state may exercise specific personal
4 jurisdiction over the defendant if the defendant has sufficient minimum contacts with the
5 forum "such that the maintenance of the suit does not offend 'traditional notions of fair
6 play and substantial justice'" under due process. *International Shoe Co. v. Washington*,
7 326 U.S. 310, 316 (1945).

8       Under Arizona's long-arm statute, an Arizona state court can exercise personal
9 jurisdiction over defendants so long as doing so adheres to due process under the Arizona
10 Constitution and the United States Constitution. Ariz. R. Civ. P. 4.2(a). "The analyses of
11 personal jurisdiction under Arizona law and federal due process are, therefore, the same."
12 *Discovery Land Co. LLC v. Discovery Global LLC*, No. CV-20-01940-PHX-MTL, 2021
13 WL 148641, at *5 (D. Ariz. Jan. 15, 2021).

14       RRC has sufficient minimum contacts with Arizona under traditional notions of
15 fair play and substantial justice. To establish if the defendant has sufficient minimum
16 contact with the forum state, the Ninth Circuit uses the three-pronged test from
17 *Schwarzenegger*. The prongs are:

18      "(1) The non-resident defendant must purposefully direct his activities or
19      consummate some transaction with the forum state or resident thereof; or perform
20      some act by which he purposefully avails himself of the privilege of conducting
21      activities in the forum, thereby invoking the benefits and protections of its laws;
22      (2) the claim must be one which arises out of or relates to the defendant's forum-
23      related activities; and
24      (3) the exercise of jurisdiction must comport with fair play and substantial justice,
25      i.e. it must be reasonable."

26 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting
27 *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff has the burden to satisfy
28 prongs one and two, after which the defendant has the burden to satisfy prong three. *Id.*

1

### 1. *Schwarzenegger* Test Prong One

2     Plaintiff sufficiently demonstrated that RRC either purposefully availed itself to

3   the privileges of operating within Arizona or that RRC purposefully directed its allegedly

4   defamatory statements into Arizona.

5     When addressing the first prong of the *Schwarzenegger* three-part test, the Ninth

6   Circuit uses one of two different approaches: purposeful-direction analysis or purposeful-

7   availment analysis. *Id.* Which approach is applicable depends on the nature and context

8   of the claim. *Id.* Purposeful-direction analysis typically is appropriate in cases involving

9   torts while purposeful-availment analysis ordinarily is appropriate in contracts cases. *Id.*;

10  *see also Discovery*, 2021 WL 148641, at *7. However, the Ninth Circuit has "specifically

11  recognized that '[its] cases do not impose a rigid dividing line' between purposeful-

12  availment and purposeful-direction." *Impossible Foods Inc. v. Impossible X LLC*, 80

13  F.4th 1079, 1088–89 (9th Cir. 2023) (quoting *Global Commodities Trading Grp., Inc. v.*

14  *Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). Rather than

15  strictly adhering to a tort-contract dichotomy when selecting between purposeful-

16  direction or purposeful-availment analysis, the Ninth Circuit generally conducts

17  purposeful-direction analysis when the defendant's conduct occurred outside the forum

18  state while it opts for purposeful-availment analysis when the defendant's conduct was

19  within the forum. *Id.* at 1088; *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905

20  F.3d 597, 604 (9th Cir. 2018) (reaffirming that purposeful-availment analysis applies if

21  "the defendant has taken deliberate action within the forum state" while purposeful-

22  direction analysis extends to a "defendant who never physically entered the forum state").

23    For purposeful direction, the Ninth Circuit uses the three-part test from *Calder v.*

24  *Jones* to determine if the defendant purposefully directed his or her activities toward the

25  forum state. 465 U.S. 783 (1984). To satisfy the *Calder* test, the defendant must have

26  allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

27  causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*

28  *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Regarding the second

1   element of the *Calder* test, if the defendant's conduct is aimed at the plaintiff who is a

2   resident of the forum state while the plaintiff is in the forum, the defendant's conduct is

3   "expressly aimed at the forum state." For example, in *Panavision Intern., L.P. v.*

4   *Toeppen*, the court held the defendant's extortion attempts were expressly aimed at

5   California, the forum state, because they targeted Panavision, a resident of California, and

6   injured Panavision in the forum state. 141 F.3d 1316, 1321–1322 (9th Cir. 1998);

7   *Schwarzenegger*, 374 F.3d at 807 (discussing *Panavision*, 141 F.3d at 1321–1322).

8        Here, RRC satisfied the first *Schwarzenegger* prong under both the purposeful-

9   availment approach and the purposeful-direction approach. While RRC is correct that

10  courts often use the purposeful-direction framework in tort cases, it is not an absolute

11  requirement. In the Complaint, Plaintiff noted that the events that gave rise to this action

12  took place in Pima County, Arizona while also stating that RRC published the allegedly

13  defamatory statement relating to Plaintiff's "actions" to its 28,000 employees across the

14  globe. Thus, RRC published the allegedly defamatory statements both in the forum state

15  and outside of it such that either purposeful-direction or purposeful-availment analysis

16  may apply. RRC argued that the court ought to use purposeful-direction analysis while in

17  her Response, Plaintiff used purposeful-availment analysis. The difference is

18  inconsequential because RRC satisfies the first *Schwarzenegger* prong under both

19  approaches.

20       If RRC made the allegedly defamatory statements in Arizona, then the purposeful-

21  availment analysis applies because the conduct at issue would have occurred within the

22  forum state. As noted in the Complaint, RRC is registered to do business in Arizona.

23  Thus, RRC systematically and continuously receives the "benefits and protections of the

24  laws" within Arizona while conducting its business. *International Shoe*, 326 U.S. at 319.

25  As such, RRC purposefully availed itself to the privileges of doing business in the forum

26  state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (holding that the

27  defendant purposefully availed himself to the forum state because he "availed himself of

28  the privilege of conducting business there, and because his activities are shielded by 'the

1  benefits and protections' of the forum's laws").

2       If RRC published the allegedly defamatory statement outside of Arizona, then the

3  purposeful-direction analysis would apply because the conduct at issue would have

4  occurred outside of the forum state. Accordingly, the *Calder* three-part test applies. First,

5  defamation is an intentional tort, satisfying the first *Calder* element. *See Schwarzenegger*,

6  374 F.3d at 806 (holding allegedly defamatory writing qualified as an intentional act).

7  Second, RRC's allegedly defamatory statements targeted Ruggeroli, an Arizona resident,

8  and if defamatory, did damage to her and her reputation in Arizona. This is comparable to

9  the extortion attempts in *Panavision* which were expressly aimed at the forum state

10  because they targeted the plaintiff, a resident of the forum, and injured the plaintiff in the

11  forum. Third, a defamatory statement is likely to harm Ruggeroli's reputation within

12  Arizona, particularly among RRC's Arizona members. Thus, RRC purposefully directed

13  its activities toward Arizona.

14       The first *Schwarzenegger* prong is satisfied.

15  2. *Schwarzenegger* Test Prong Two

16       Plaintiff's defamation claim arose from RRC's contact with Arizona.

17       The second prong "consider[s] the extent of the defendant's contacts with the

18  forum and the degree to which the plaintiff's suit is related to those contacts." *Impossible*

19  *Foods*, 80 F.4th at 1091 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

20  *L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006)). If the defendant has little contact

21  with the forum, that limited contact may still be sufficient if it is closely related to the

22  conduct at issue. *Id.* Likewise, if the defendant has "'continuously and deliberately

23  exploited' the forum state's market," the defendant's contacts with the forum state do not

24  need to be as closely related to the litigation. *Id.*

25       Furthermore, if the defendant's alleged conduct is an intentional tort that took

26  place within the forum state, it typically satisfies the second prong of the *Schwarzenegger*

27  three-part test. *Paccar Intern., Inc. v. Com. Bank of Kuwait, S.A.K*, 757 F.2d 1058, 1064

28  (9th Cir. 1985). Thus, if the plaintiff alleges the defendant defamed him or her in the

1    forum state, the second prong is satisfied. *See Freestream Aircraft*, 905 F.3d at 603

2    ("Because Plaintiffs allege that Defendants engaged in defamation while present in the

3    forum state, the first two prongs of the minimum contacts test are satisfied.").

4           Here, Plaintiff's claim arose from RRC's contact with Arizona. RRC has sufficient

5    minimum contact with Arizona because it is registered to do business, conducts business,

6    and publishes materials to its members there. RCC's allegedly defamatory statement was

7    made through its business operations that included its Arizona members, meaning there is

8    a sufficient relationship. Like in *Freestream Aircraft*, Plaintiff alleges RRC defamed her

9    in Arizona, the forum state, thereby satisfying the second prong under *Schwarzenegger*.

10                    3. *Schwarzenegger* Test Prong Three

11          RRC has not sufficiently demonstrated that the exercise of jurisdiction over it

12   undermines fair play and substantial justice and/or is unreasonable.

13          The *Schwarzenegger* test's third prong breaks into a seven-factor balancing test.

14   *Freestream Aircraft*, 905 F.3d at 607. Those factors are:

15          (1) the extent of the defendant's purposeful interjection into the forum state's

16          affairs;

17          (2) the burden on the defendant of defending in the forum;

18          (3) the extent of conflict with the sovereignty of the defendant's state;

19          (4) the forum state's interest in adjudicating the dispute;

20          (5) the most efficient judicial resolution of the controversy;

21          (6) the importance of the forum to the plaintiff's interest in convenient and

22          effective relief; and

23          (7) the existence of an alternative forum.

24   *Id.*

25          Here, despite RRC bearing the burden to establish that personal jurisdiction over it

26   would not "comport with fair play and substantial justice," it made no such argument in

27   its motion. For the sake of thoroughness, the Court will conduct the seven-factor

28   balancing test. Regarding Factor One, RRC has "purposefully interjected" itself into

1    Arizona's affairs having registered to do business there. Regarding Factor Two, even

2    though RRC is a resident of a foreign state, "modern advances in communications and

3    transportation have significantly reduced the burden of litigating in another [forum]."

4    *Freestream Aircraft*, 905 F.3d 597 at 608 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854

5    F.2d 1191, 1199 (9th Cir. 1988)). Regarding Factor Three, RRC provided no evidence of

6    a conflict between Arizona law and Illinois law. Regarding Factor Four, Arizona, like

7    other forum states, has an interest in allegedly tortious conduct occurring within its

8    borders, including defamation. *See Id.* Regarding Factor Five, while potential witnesses

9    and evidence related to the case may be spread out across where RRC's 28,000 members

10   reside, "this factor is 'no longer weighed heavily given the modern advances in

11   communication and transportation.'" *Id.* at 609 (quoting *Harris Rutsky & Co. Ins. Servs.,

12   Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003)). Regarding Factor Six,

13   neither party provided evidence regarding Arizona's importance to Plaintiff receiving

14   relief. Regarding Factor Seven, RRC did not provide an alternative forum to resolve this

15   case. In sum, Factors One and Four favor Plaintiff while the other factors provide little to

16   no support for either party. Thus, RRC did not provide sufficient evidence that it would

17   be unreasonable for Arizona to have personal jurisdiction over it.

18   Because Plaintiff met her burden of satisfying the first two prongs of the

19   *Schwarzenegger* test and RRC did not meet its burden of satisfying the third prong, RRC

20   has sufficient minimum contacts with the District of Arizona, and this Court has personal

21   jurisdiction over it. RRC's motion to dismiss for lack of personal jurisdiction is denied.

22   ### B. Personal Jurisdiction as to Milshteyn

23   Milshteyn argues, and the Court agrees, that the Complaint makes no factual

24   allegations indicating that Milshteyn has sufficient contact with Arizona for this Court to

25   exercise personal jurisdiction over him. Moreover, the Court is not obligated to consider

26   the merits of an unopposed motion to dismiss. *See* LRCiv. 7.2(i), *Wystrach v. Ciachurski*,

27   26 Fed. Appx. 606 (9th Cir. 2008), *Hicks v. Blitz USA Inc.*, No. CV-18-00543-PHX-DJH,

28   2018 WL 9878565, at *1 (D. Ariz. May 25, 2018) (treating a motion to dismiss as

1   unopposed when Plaintiff failed to file response within 14 days). Milshteyn's motion is

2   therefore granted on the ground that this Court lacks personal jurisdiction.

3   ### C. Failure to State a Claim

4   Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal when the

5   plaintiff has not stated a claim upon which relief can be granted. To survive a 12(b)(6)

6   motion to dismiss, a complaint must provide a sufficient factual account such that when it

7   is assumed to be true, the court can "draw the reasonable inference that the defendant is

8   liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v.*

9   *Twombly*, 550 U.S. 544, 556 (2007)). The factual assertions in the complaint must give

10  rise to merely a *plausible* inference of liability; they need not establish *probable* liability.

11  *Id.* Whether a complaint confers a plausibility of liability "is a context-specific task that

12  requires the reviewing court to draw on its judicial experience and common sense." *Id.* In

13  doing so, the court must "draw all reasonable inferences in favor" of the plaintiff. *Boquist*

14  *v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of*

15  *Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

16  ### 1. Defamation *Per Se* and Defamation *Per Quod* Claims

17  Plaintiff failed to state a claim for defamation *per se* (Count One) or for

18  defamation *per quod* (Count Two).

19  To constitute defamation in Arizona, "a publication must be false and must bring

20  the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's

21  honesty, integrity, virtue, or reputation." *Rogers v. Mroz*, 252 Ariz. 335, 337 (2022)

22  (quoting *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)). Substantial

23  truth is an absolute defense against defamation claims. *Read v. Phx. Newspapers, Inc.*,

24  169 Ariz. 353, 355 (1991).[2] Defamation can be *per se* or *per quod*. Defamation *per se*

25  includes statements that are facially defamatory without the need for "extrinsic matter" or

26  facts to understand the statements are defamatory while defamation *per quod* includes

27  statements that require knowledge of "certain surrounding circumstances" to fall within

28  _____

[2] A statement can be substantially true if it has merely "slight inaccuracies" such that the "gist" of the statement is true. *Read*, 162 Ariz. at 337.

1   the definition of defamation. *Ilitzky v. Goodman*, 57 Ariz. 216, 220–21 (1941)

2   (explaining that "X murdered Y" would be defamation *per se* while "X was the only

3   person present at the home of Y on May 1 between the hours of six and nine" would be

4   defamation *per quod* because it requires knowledge that the murder occurred at that time

5   and place to imply X murdered Y); *Fedoseev v. Alexandrovich*, No. CV–05–536–TUC–

6   DCB, 2006 WL 964281, at *4 (D. Ariz. April 11, 2006).

7         A statement can be defamatory based on its explicit wording or through its clear

8   implication, insinuation, or innuendo. *Rogers*, 252 Ariz. at 339 ("[A] statement is

9   actionable if it implies a clearly defamatory meaning"); *see Phx. Newspapers, Inc. v.*

10  *Church*, 103 Ariz. 582, 588 (1968) (holding that an "insinuation" of "intimidation,

11  blackmail, and terror" is defamatory *per se*); *Ilitzky*, 57 Ariz. at 221 (explaining that

12  "otherwise innocent" statements may entail an innuendo such that they become

13  defamatory); *see also Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010). Whether the

14  statement itself or its implication are defamatory is based on their "probable effect[s]

15  upon the mind of the average reader." *Phx. Newspapers*, 103 Ariz. at 587 (quoting

16  *MacLeod v. Tribune Publ'g, Co.*, 52 Cal.2d 536, 547 (1959)). If a statement is not

17  explicitly defamatory and instead requires the average reader or listener to make an

18  inference for it to be so, the statement is defamatory *per quod*. *Ilitzky*, 57 Ariz. at 221.

19  Consequently, a statement that requires an inference to be defamatory cannot be

20  defamation *per se*. *Central Ariz. Light & Power Co. v. Akers*, 45 Ariz. 526, 536 (1935)

21  ("In determining whether the advertisement is libelous per se, we look to the [statement]

22  alone. We cannot consider the innuendoes pleaded by plaintiff. Words that are libelous

23  *per se* do not need an innuendo because they are libelous in and of themselves."); *Phx.*

24  *Newspapers*, 103 Ariz. at 587.

25        In defamation *per se* claims, the plaintiff does not need to plead to special

26  damages because the damages are assumed. *Ilitzky*, 57 Ariz. at 221. Conversely, in

27  defamation *per quod* claims, the plaintiff must plead special damages, including lost

28  profits. *Id.*; *Dealer Comput. Serv.s, Inc. v. Fullers' White Mountain Motors, Inc.*, No.

1  CV07–00748–PCT–JAT, 2008 WL 4628448, at \*4 (D. Ariz. Oct. 17, 2008); *Modla v.*

2  *Parker*, 17 Ariz. App. 54, 56 (1972) ("As a general rule, slander Per quod is not

3  actionable unless special damages are pleaded and proved.").

4         Here, Plaintiff failed to state either a defamation *per se* claim because all the

5  statements at issue require inference to be defamatory or a defamation *per quod* claim

6  because the Plaintiff pled no special damages. The Court finds it plausible that RRC's

7  statement that it "removed" Plaintiff because of "her actions" without any other detail

8  could imply, insinuate, or provide an innuendo that Plaintiff committed some

9  wrongdoing. The implication in RRC's statement plausibly damaged Plaintiff's

10  professional reputation among the RRC members who read or heard it. Because there is

11  no facially negative quality to the phrase "her actions" and instead requires an inference

12  to be harmful, the statement cannot be part of a defamation *per se* claim. It can, however,

13  provide grounds for a defamation *per quod* claim. Although RRC was correct in asserting

14  that Plaintiff's removal itself cannot be defamatory because it truly happened, the

15  plausible implication of wrongdoing in the explanation for the removal may be untrue

16  and therefore defamatory.

17         Plaintiff also alleged that RRC continued to make statements regarding Plaintiff's

18  removal, including a statement from an RRC board member that RRC removed her

19  because of "sexual harassment." Unlike the example of a *per se* defamatory statement in

20  *Ilitzky* that "X murdered Y," the board member did not directly state that Plaintiff

21  sexually harassed someone. Rather, as Plaintiff stated in the Complaint, the Court finds it

22  plausible that the board member's statement could be interpreted to "imply" that Plaintiff

23  sexually harassed another. Because the statement is plausibly defamatory because of its

24  implication, it cannot be facially defamatory and can constitute only defamation *per*

25  *quod*.

26         In the Complaint, Plaintiff stated that RRC made false statements about Plaintiff

27  related to Mr. Savard's attendance at the NAR conference reception in Cancun, Mexico.

28  Goedert had previously barred Mr. Savard from attending another RRC event. The Court

1   finds the statements about Plaintiff and Mr. Savard's presence at the reception are not

2   facially defamatory. Nonetheless, the Court finds it plausible that knowledge of the bar

3   on Mr. Savard's attendance at prior RRC events could plausibly imply misconduct from

4   the Plaintiff through her alleged involvement in Mr. Savard's presence at the reception.

5   Because such a defamatory implication required knowledge of extrinsic evidence, the

6   statements could plausibly be defamation *per quod*.

7          Under the count for defamation *per quod*, Plaintiff failed to plead special damages

8   ("actual pecuniary loss") as required. *F.A.A. v. Cooper*, 566 U.S. 284, 295 (2012). In her

9   Complaint, Plaintiff claimed that RRC's conduct damaged her "reputation for honesty,

10  integrity, and virtue, and otherwise brought Plaintiff into disrepute." However, "loss of

11  reputation, shame, mortification, injury to the feelings and the like" constitute general

12  damages, not special damages. *Id.* at 295–96. Plaintiff's other statement that RRC's

13  conduct "caused her to be damaged in an amount to be proven at trial" did not provide a

14  factual basis for special damages. Because Plaintiff provided facts sufficient only to find

15  a claim for defamation *per quod* and did not plead special damages, Count One

16  (defamation *per se*) and Count Two (defamation *per quod*) are dismissed.

17                    2. False Light Invasion of Privacy Claim

18         Plaintiff sufficiently stated a claim for false light invasion of privacy (Count

19  Three).

20         To claim false light invasion of privacy, a plaintiff must show that the defendant

21  gave "publicity" to a matter about the plaintiff that places the plaintiff in a false light

22  "highly offensive to a reasonable person." *Godbehere*, 162 Ariz. at 338. The defendant

23  must have "had knowledge of or acted in reckless disregard as to the falsity of the

24  publicized matter and the false light in which the [plaintiff] would be placed." *Id.*;

25  *Fedoseev* 2006 WL 964281, at *5 ("[A] plaintiff must show (1) the defendant knowingly

26  or recklessly; (2) gave publicity to: (3) false information or innuendo about the plaintiff;

27  (4) that a reasonable person would find highly offensive."). Whereas the publication at

28  issue must be false in a defamation claim, a false light invasion of privacy claim can be

1    the product of a "false innuendo created by a highly offensive presentation of a true fact."

2    *Godbehere*, 162 Ariz. at 341. A false light invasion of privacy claim is meant to address

3    "mental and emotional interests," but the plaintiff still may recover for reputational

4    damages. *Id.*; *Avid Telecom LLC v. Frankel*, No. CV-22-00558-TUC-JCH, 2023 WL

5    5045903, at *2 (D. Ariz. Aug. 8, 2023). So long as the publicity of the statement in

6    question is "unreasonably offensive and attributes false characteristics," the plaintiff can

7    make a claim for false light invasion of privacy. *Godbehere*, 162 Ariz. at 341.

8        A statement is given sufficient publicity if it is made to a large audience. *Hart v.*

9    *Seven Resorts, Inc.*, 190 Ariz. 272, 280 (Ariz. Ct. App. 1997) (quoting Restatement

10   (Second) of Torts § 652D). However, the plaintiff cannot claim false light invasion of

11   privacy "if he or she is a public official *and* the publication relates to performance of his

12   or her public life or duties." *Godbehere*, 162 Ariz. at 343. The public official title applies

13   to government employees or those with substantial control over governmental affairs. *Id.*

14   The public official designation does not apply to non-governmental employees even if

15   they are acting in the public eye. *See Longoria v. Kodiak Concepts, LLC*, 527 F. Supp. 3d

16   1085, 1105 (D. Ariz. 2021) (holding that even though they have a large following on

17   social media, the plaintiffs do not qualify as public officials because they are not

18   government employees). Thus, even if the plaintiff's actions have publicity, so long he or

19   she is not acting as public officials, the conduct is part of the plaintiff's private affairs and

20   actionable for false light invasion of privacy. *Godbehere*, 162 Ariz. at 343.

21       Here, Plaintiff sufficiently stated a claim for false light invasion of privacy. First,

22   RRC knew it published a false statement about Plaintiff. In its Reply, RRC argued that

23   Plaintiff's "removal" cannot be grounds for false light invasion of privacy because the

24   removal truly happened. However, the cause of action is not based on the removal itself,

25   but RRC's explanation for the removal and the implication of the words "her actions"

26   used in the explanation. The Court finds it plausible RRC knew the implication of

27   misconduct in the words "her actions" was false; it is plausible RRC was aware Plaintiff

28   had not invited Mr. Savard to the reception in Cancun—the grounds for the removal—

1   after Plaintiff provided RRC with letters from other RRC members that they had invited

2   Mr. Savard.

3        Second, the statement in question was given sufficient publicity. RRC published

4   the statement that Plaintiff was "removed" to its approximately 28,000 members. The

5   Court finds that an announcement to 28,000 individuals qualifies as a "large audience"

6   such that the statement was given sufficient publicity. Although the statement had

7   publicity, Plaintiff is not a public official, so RRC's statement about her and her removal

8   relates to private affairs and is accordingly actionable for false light invasion of privacy.

9        Third, the innuendo in RRC's statement about Plaintiff was false. The Court finds

10  that RRC's statement that it "removed" Plaintiff because of "her actions" without any

11  other detail could imply, insinuate, or provide an innuendo that Plaintiff committed some

12  wrongdoing. Although it is true that Plaintiff was "removed" from the board and the

13  board meeting concerning her future with the company, it is the implication of

14  misconduct in this true statement's "presentation" that is false and therefore provides

15  grounds for a claim.

16       Fourth, the innuendo in RRC's statement about Plaintiff was highly offensive. The

17  Court finds an implication made to all members of her employer that Plaintiff was

18  recused because of her misconduct could be "highly offensive." Because the Court

19  cannot say it is not highly offensive as a matter of law that RRC implied in the phrase

20  "her actions" that Plaintiff is guilty of some wrongdoing, it finds that Plaintiff provides a

21  claim upon which relief can be granted. *See Canas v. Bay Entertainment*, 252 Ariz. 117,

22  122 (Ariz. Ct. App. 2021).

23       Because the Court finds that Plaintiff provided a sufficient factual basis for all

24  elements of false light invasion of privacy, the Fed. R. Civ. P. Rule 12(b)(6) motion to

25  dismiss Count Three (false light invasion of privacy) is denied.

26                        **D. Qualified Privilege**

27       The Court cannot dismiss Count Three (false light invasion of privacy) on

28  qualified privilege grounds because Plaintiff presented evidence of malice.

1    Because the Court dismissed Count One (defamation *per se*) and Count Two

2    (defamation *per quod*) for a failure to state a claim upon which relief can be granted, the

3    Court will not consider the issue of qualified privilege regarding those counts. It will

4    consider the applicability of qualified privilege to Count Three.

5    Communication is conditionally privileged if it was made in a privileged occasion

6    and the defendant did not abuse the privileged occasion. *Roscoe v. Scoolitz*, 105 Ariz.

7    310, 312 (1970). The court determines if an occasion is privileged; if the court finds the

8    occasion privileged, the jury determines if the defendant abused the privileged occasion.

9    *Id.* at 313. The defendant abused the privilege if he or she acted with malice. *Aspell v.*

10   *Am. Cont. Bridge League of Memphis*, *Tenn.*, 122 Ariz. 399, 401 (Ariz. Ct. App. 1979).

11   "Malice is established by showing that [the defendant] acted in reckless disregard of the

12   truth, or with actual knowledge that [his or her] statements were false." *Id.* If the plaintiff

13   does not allege that the defendant abused his or her qualified privilege, then the court

14   may dismiss the claim on qualified privilege grounds. *See Thompson v. Fin. Regs., Inc.*,

15   No. CV–11–382–PHX–GMS, 2011 WL 5037028, at *4 (D. Ariz. Oct. 24, 2011).

16   Communication among members of a group or association concerning disciplinary

17   actions against one of its members constitutes a privileged occasion. *See Aspell*, 122 Ariz.

18   at 400. In *Aspell*, the court held that there was a privileged occasion because the

19   American Contract Bridge League (ACBL) provided its members the minute entry

20   explaining why it suspended Aspell, another member. *Id.* The court explained that the

21   ACBL acted in accordance with its duty to its members to regulate and announce its

22   affairs, including disciplinary ones. *Id.*

23   Here, the Court cannot dismiss Count Three on qualified privilege grounds

24   because Plaintiff presented evidence of malice. Like the ACBL in *Aspell*, RRC acted in

25   accordance with its duty to announce its disciplinary action against Plaintiff, a board

26   member, to its other members. Therefore, the Court finds that RRC's statement that

27   Plaintiff was "removed" from the Board because of "her actions" was made in a

28   privileged occasion. However, RRC knew the implication of misconduct in the phrase

"her actions" was false because RRC knew Plaintiff had not invited Mr. Savard to the Cancun reception, the grounds for the removal, after Plaintiff presented letters from other RRC members that they had invited Mr. Savard. Drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff alleged evidence of malice such that RRC abused its qualified privilege. Thus, the Court denies the motion to dismiss Count Three on qualified privilege grounds.

## III. CONCLUSION

RRC and Milshteyn challenge Plaintiff's defamation *per se* claim, defamation *per quod*, and false light invasion of privacy claim on three grounds: (1) a lack of personal jurisdiction, (2) a failure to state a claim upon which relief can be granted, and (3) qualified privilege.

This Court may exercise personal jurisdiction over RRC but not over Milshteyn. Plaintiff did not provide a plausible factual basis for a defamation *per se* claim because the allegedly defamatory statements are not facially defamatory. Plaintiff also did not provide a plausible factual basis for a defamation *per quod* claim because she did not allege special damages. Plaintiff provided a sufficient factual basis for a false light invasion of privacy claim. Further, Plaintiff provided a sufficient factual basis that RRC acted with malice such that the Court cannot dismiss the false light invasion of privacy claim on qualified privilege grounds. Accordingly,

…

…

…

…

…

…

…

…

…

1       **IT IS ORDERED** as follows:

2       1. RRC's Motion to Dismiss (Doc. 11) is **granted in part** and **denied in part**.

3            a. This Court has personal jurisdiction over Defendant RRC.

4            b. Counts One and Two are dismissed, Count Three remains.

5       2. Milshteyn's Motion to dismiss (Doc. 17) is **granted** on the basis that this Court

6         lacks personal jurisdiction over Milshteyn.

7            a. Milshteyn shall be removed from this action as a defendant.

8       Dated this 13th day of September, 2024.

9

10

11

12                               Honorable James A. Soto
                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28