**UDALL LAW FIRM, LLP**
ATTORNEYS AT LAW
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353
ccline@udalllaw.com
cmeynard@udalllaw.com

Craig Cline SBN 020412, PCC# 65448
Cassandra Meynard SBN 26316, PCC# 66135
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Ruggeroli, a single woman,<br><br>      Plaintiff,<br><br>vs.<br><br>Residential Real Estate Council, a foreign nonprofit corporation,<br><br>      Defendant. | NO. CV-23-00259-TUC-JAS<br><br>**SECOND AMENDED COMPLAINT**<br><br><br><br>*Assigned to*:<br>The Hon. James A. Soto |

Pursuant to Rule 15(a)(1)(B), Plaintiff Pamela Ruggeroli, for her Second Amended Complaint, alleges as follows:

## **PARTIES**

1. Plaintiff Pamela Ruggeroli ("Plaintiff") is a resident of Pima County, Arizona.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

2.    Defendant Residential Real Estate Council ("Defendant" or "RRC") is a foreign nonprofit corporation registered to do business in Arizona and doing business in Pima County, Arizona.

3.    Defendant caused events giving rise to this action to take place in Pima County.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action and over the parties hereto, and venue in Pima County is proper pursuant to A.R.S. § 12-401 as Defendant resides without the state and Plaintiff resides in Pima County.

## FACTUAL ALLEGATIONS

5.    Plaintiff is a REALTOR® and a Certified Residential Specialist (CRS) in Tucson, AZ.

6.    Defendant is foreign nonprofit corporation of approximately 28,000 members across the globe who are REALTORS® and of which a large percentage are also CRS.

7.    A REALTOR® becomes a CRS through education from Defendant RRC.

8.    In or around November 2019, Holli Woodward ("Woodward"), the then-current First Vice President of Defendant's Board of Directors ("the Board"), asked Plaintiff to apply for the office of 2021 First Vice President of the Board.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

9.    Plaintiff's 2020 election campaign was based on "Members First." Her campaign was successful and she was elected by the members to the Board.

10.    When a member of RRC is elected to the Board, they first hold office as First Vice President and enter a cycle of leadership that automatically progresses the following year to President Elect, President, and finally Immediate Past President.

11.    Plaintiff took office in January 2021 as First Vice President. Per Defendant's bylaws, she was also Chair of the Finance Committee.

12.    In carrying out her duties, Plaintiff became aware of irregularities in the financial statements prepared by Defendant's Chief Financial Officer ("CFO") at the time.

13.    In 2021, Alex Milshteyn ("Milshteyn") was President of the Board, and in 2022, he was Immediate Past President. During all of that time he was, and remains, an RRC CRS, and a presenter of podcasts, webinars and presentations on behalf of RRC.

14.    In addition, Milshteyn continues to be an RRC Past President, is recognized as such on the RRC website, and participates in official RRC events for RRC Past Presidents.

15.    On or around November 14, 2021, then RRC CEO Lana Vukovljak told Milshteyn that Lisa Marshall, a female member of Defendant's staff (hereafter, "Marshall") had alleged sexual harassment by Plaintiff's partner Mr. Savard

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

("Savard") during the RRC Awards Dinner/Dance during the November 2021 National Association of REALTORS ("NAR") Annual Conference in San Diego, California.

16.    Milshteyn was not present at the RRC Awards Dinner/Dance during the November 2021 National Association of REALTORS ("NAR") Annual Conference in San Diego, California but was present at the installation prior to the Dinner/Dance.

17.    On  or around November 15, 2021, Milshteyn repeated to others, including Plaintiff, that he had heard that Savard told Marshall that he wanted to "stick his tongue down her throat" at the RRC Awards Dinner/Dance.

18.    Beginning in November 2021 and continuing throughout at least 2023, Milshteyn published to RRC, the Board, and to others the false allegation that Plaintiff's reaction to the false allegation against Savard was to respond: "Oh Gee, that is so funny."

19.    This is not how Plaintiff responded to Alex Milshteyn's false allegation.

20.    Plaintiff had been with Savard during the entire Dinner/Dance and knew the allegation was untrue and told Milshteyn so. She explained to Milshteyn that she knew Savard had done a joke "hug, hold, kiss" handshake with one of the staff members, but that she knew that Savard had not engaged in sexual harassment of an RRC staff member.

21.    Milshteyn has admitted that he has no firsthand knowledge as to whether the allegation against Savard is true; moreover, before discussing the incident with

-4-

Plaintiff and with others, he had never seen any complaint to RRC by Marshall against Savard and does not know whether RRC did an investigation into the incident.

22. Despite the lack of a complaint or investigation, Milshteyn told Plaintiff and others that Savard would no longer be allowed to attend Defendant's events.

23. A short time later, Marshall reached out to Plaintiff and told her that she had not made such a complaint, that CEO Vukovljak's allegation about Savard was untrue, and that CEO Vukovljak was fabricating the allegation to get Plaintiff off the Board due to her investigation into Defendant's financial statements and membership counts.

24. Marshall told Plaintiff that she had not reported that Savard had touched her but that, more importantly, other conference attendees had harassed her at an RRC Expo booth; CEO Vukovljak did not document or investigate the claim in violation of Defendant's policies and procedures.

25. Marshall stated that her complaints against RRC are based on harassment and other forms of discrimination by RRC and that she would be willing to testify about the same.

26. On information and belief, RRC and its agent Milshteyn knew this, yet continued to publish to others in 2022 and 2023 that Plaintiff tolerated –and was even amused by—alleged sexual harassment of staff by her partner.

27.   At all times Milshteyn published these false remarks, he was acting as an agent of RRC.

28.   RRC and its agents heard and republished Milshteyn's false allegations about Plaintiff in 2021 through 2023. On information and belief, RRC and its agents continue to republish these false allegations about Plaintiff.

29.   Plaintiff confirmed with Defendant's Interim CEO/CFO that they had no documentation of any allegation by Marshall of sexual harassment against Savard.

30.   In January 2022, Woodward became President of the Board, and Alex Milshteyn became Immediate Past President of the Board.

31.   Woodword has been Immediate Past President since January 2023, currently holds that Board office, is an RRC CRS, and presents podcasts, webinars, and presentations on behalf of RRC.

32.   In Spring of 2022, Woodward told Plaintiff that she could bring Savard to an RRC reception at a conference organized by a separate entity, the NAR REALTORS® Political Action Committee President's Circle Conference in the Bahamas.

33.   Immediate Past President Milshteyn was aware that Woodward told a third party that she had vacationed with Plaintiff and Savard and he was "not that kind of guy" and did not "mean any harm."

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

34.    In the Summer of 2022, Woodward, Milshteyn, and First Vice President Tricia Nekota ("Nekota") had a leadership team meeting with RRC Counsel Paula Goedert ("Goedert") without advising or including Plaintiff who was President-elect at the time.

35.    In August 2022, Marshall told Plaintiff that she was filing a complaint against the Human Resources Department and the Interim CEO based on r discrimination, specifically, discrimination based on race and medical issues.

36.    In September 2022, Marshall called Plaintiff again to tell her that Defendant was denying her request for medical leave and that she was afraid she would be terminated if she took medical leave.

37.    On November 4, 2022, Defendant's new CEO Jeff Hornberger terminated Marshall.

38.    On November 7, 2022, RRC counsel Goedert told Plaintiff that Savard was not allowed to attend Plaintiff's installation as President of the Board. It is unclear on what authority Ms. Goedert made this assertion, but the basis was once again the false allegation about Savard and Plaintiff's reaction to the allegation.

39.    On November 11, 2022, Plaintiff was installed as President of the Board and officially took office on January 1, 2023. Savard did not attend.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

40.     In March 2023, Plaintiff and Savard attended the 2023 convention of the National Association of REALTORS® ("NAR") Political Action Committee ("RPAC") President's Circle Conference in Cancun, Mexico.

41.     NAR and RRC are distinct organizations, and NAR RPAC and RRC are distinct organizations.

42.     Defendant held an unofficial happy hour for RRC members and their guests who were present at the Cancun NAR RPAC conference.

43.     Plaintiff, in her capacity as President, arrived thirty minutes prior to the reception with 2023 First Vice President Vivian Macias to greet the members and their guests at Defendant's reception. RRC CRS and Past President Milshteyn and CEO Hornberger were already present.

44.     Milshteyn repeated the false allegations about Savard and Plaintiff's reaction to the false allegations, and told others that Plaintiff was engaging in misconduct by "bringing" Savard to the happy hour such that her alleged misconduct was "a slap in the face" to him and to his authority on behalf of RRC.

45.     Plaintiff did not "bring" or "invite" Savard to the unofficial RRC happy hour as Milshteyn claimed and told others, nor did she talk to Savard at the happy hour.

46.     Savard came to the RRC happy hour as the guest of five other RRC members and their spouses who had all arrived together and had encouraged Savard to come as their guest to the open event.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

47.    Plaintiff did not invite Savard to the happy hour nor did she visit him during the fifteen or so minutes that he was present at the reception.

48.    During and for at least one week after the NAR RPAC President's Circle Conference in Cancun, Mexico, Milshteyn falsely told other RRC agents including Woodward and CEO Hornberger, and republished to other RRC members including President Elect Tricia Nekota ("Nekota") and First Vice President Vivian Macias, that Savard's presence at the unofficial happy hour constituted misconduct by Plaintiff, and that Plaintiff had laughed off allegations of sexual harassment of staff.

49.    Woodward, Milshteyn, Nekota, Macias and Hornsberger also secretly met with RRC counsel without then-RRC President Plaintiff to discuss removing her from the Board.

50.    Upon return from the conference, Defendant RRC had a leadership team call with Plaintiff during which Nekota read Plaintiff a pre-written statement accusing Plaintiff of misconduct by bringing Savard to the RRC happy hour held during the 2023 convention of the NAR PAC President's Circle Conference in Cancun, Mexico. Nekota gave Plaintiff the option to resign, remain as President to chair three Board meetings only without fulfilling any of her other duties as President, or take the matter up with the RRC Board of Directors.

51.    It is unclear what authority Nekota had to give this directive. There was nothing in the RRC Bylaws that would give Nekota this authority.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

52.     On March 8, 2023, Plaintiff received a call from Board of Director Debra Beagle regarding an email she had received about a Special Meeting being held by the Board on March10, 2023. RRC had not sent this email to Plaintiff to make her aware of or to invite Plaintiff to the March 10, 2023, Special Meeting.

53.     On March 9, 2023, Defendant's CEO Hornberger sent Plaintiff an email inviting her to attend the March 10, 2023, Special Meeting. Plaintiff was admitted to the meeting twenty minutes after the meeting began.

54.     Plaintiff was not properly notified of the Special Meeting and was not given an opportunity to vote or to waive notice of the Special Meeting in violation of RRC's bylaws.

55.     During the twenty minutes or so before Plaintiff was allowed to join the Special Meeting, Hornsberger republished to the other Board members the false allegations that Plaintiff had engaged in misconduct in violation of RRC requirements at the NAR RPAC President's Circle Conference in Cancun, Mexico.

56.     On March 10, 2023, after the Special Meeting, Plaintiff's attorney received an email from Goedert stating that the Board had voted to restrict all of Plaintiff's duties and responsibilities as President including removing all of her travel and all of her speaking engagements on behalf of RRC, telling Plaintiff that such duties would be transferred to President Elect Nekota.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

57.    Removing the benefit of all of Plaintiff's travel for RRC constituted special damages to Plaintiff.

58.    Goedert told Plaintiff she would have to cancel her scheduled presentations to the Tucson Association of Realtors and the Arizona Association of REALTORS®.

59.    The Board did not tell Plaintiff the reason for the removal of her duties, but implied that it was because they believed Plaintiff engaged in misconduct at the NAR RPAC President's Circle Conference in Cancun, Mexico by "bringing" Savard to the RRC happy hour.

60.    Nekota had not recused herself and had not abstained from voting despite an apparent conflict of interest.

61.    After Plaintiff notified the Board that they had not properly noticed the March 10, 2023, Special Meeting, Defendant called another Special Meeting on March 27, 2023.

62.    On March 11, 2023, RRC Executive Assistant Patricia Stodolny sent the following message about the March 27, 2023, Special Meeting to other members of the RRC Board:

The purpose of the meeting is to discuss the **actions of an officer and possible ramifications.**

63.    The RRC Minutes of that March 10, 2023, Board Meeting state:

EXECUTIVE SESSION:

-11-

Tricia moved the meeting into Executive Session.

President Pam Ruggeroli and her lawyer joined the meeting at 3:50 pm and were invited to speak and present the facts with regards to the attendance of her partner at the RRC reception at the NAR meeting in Mexico. Pam had been informed by prior communication from the then current President that her partner could not attend RRC events. Pam stated that she was not responsible for the actions of her partner, that she could not control his actions, and that she did not perceive the event as an RRC event. It was noted that the invitation was sent by Pam under the RRC logo.

A vote was taken to recuse Pam from the meeting for discussion **of her conduct.**

Pam and her lawyer left.

The committee was brought out of Executive Session and the following motion was made.

ACTION MOTION:

It was MOVED, SECONDED and CARRIED, to restrict all travel, activities, and responsibilities (other than chairing board meetings) and assign all responsibilities and duties to President-elect Tricia Nekota.

RRC attorney will deliver the notice to Pam Ruggeroli's attorney.

A motion was made to suspend Pam's role of Chair of RRC. It was decided that the discussion on further motions would be deferred to a meeting on March 27th. (Emphasis added)

64.    The Agenda for the March 27, 2024, RRC Board meeting stated that the agenda included "Discussion of the **Actions of an Officer and Possible Ramifications**."

65.    Before the March 27, 2023, Special Meeting, Plaintiff provided the Board with four written statements from five RRC members who clarified that they, not

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

Plaintiff, were the ones that had invited and brought Savard to the happy hour as their guest.

66.    Plaintiff did not invite Savard and, in fact, asked him not to attend the RRC happy hour.

67.    At the Special Meeting, RRC falsely told Plaintiff that Marshall was threatening legal action against Defendant for its failure to follow its employment policies and procedures.

68.    Specifically, during the Special Meeting, Goedert and Hornberger falsely stated to Plaintiff and the Board that the only allegation of sexual harassment in Marshall's demand letter was an allegation of sexual harassment against Savard.

69.    In fact, while Marshall did allege in her demand letter that Savard inappropriately touched her, she also alleged that she was also subjected to several other men being grossly inappropriate to her while she was working at November 2021 conference but that RRC blamed her and told her she had brought the mistreatment on herself.

70.    RRC had requested its CRS, presenter and Past President Alex Milshteyn to attend the meeting for the specific purpose of republishing the false allegations that Savard tried "stick his tongue down" Marshall's throat and that Plaintiff laughed off the allegation and said it was funny.

-13-

71. As directed, requested, and expected by RRC, Milshteyn falsely told the Board that Savard told Lisa Marshall that he wanted to "stick his tongue down her throat."

72. As directed, requested, and expected by RRC, Milshteyn republished to others the false allegation that in response to the false allegation of sexual harassment to a staff member by Savard, Plaintiff laughed it off and said it was funny.

73. As directed, requested, and expected by RRC, Milshteyn also falsely told others, including to RRC Board members while Plaintiff was present, Savard's presence at the happy hour in Cancun constituted misconduct by Plaintiff.

74. Throughout 2023 Milshteyn, an RRC CRS, agent, and Past President; Woodward; and Nekota republished that Plaintiff laughed off the allegation that her partner wanted to "stick his tongue down" a staff member's throat to other RRC members.

75. This was false; Plaintiff takes matters of sexual harassment and gender-based misconduct very seriously and has a reputation of intolerance for discrimination of any kind.

76. Milshteyn also falsely told the Board that he had been present at a bar and had needed to protect RRC members and staff from Savard.

77. The implication of these statements was that Plaintiff happily tolerated and laughed at mistreatment of women, which is false.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

78.    RRC brought Milshteyn to republish false allegations about Plaintiff and her alleged misconduct for the purpose of harming her reputation and encouraging the Board to remove Plaintiff from her position as President of the RRC Board.

79.    The statements by RRC's agents Milshteyn and CEO Hornberger also indirectly targeted and directly affected all RRC members who had elected Plaintiff to represent them on the RRC Board.

80.    During the March 27, 2023, Special Meeting, outside the presence of Plaintiff, based on RRC's agent and witness Milshteyn's false statements about Plaintiff, the Board voted to remove Plaintiff as President and member of the Board.

81.    Once again, on information and belief, during this vote, President Elect Nekota did not recuse herself or abstain from the vote.

82.    On March 27, 2023, RRC's Nekota notified Plaintiff via email that: "the Board voted today to remove [Plaintiff] as an officer of the Residential Real Estate Council."

83.    On March 30, 2023, RRC emailed its members a statement notifying them that Nekota had "officially assumed the Presidency role," and that "her appointment, though unprecedented, [was] a decision of RRC's Board of Directors.

84.    Defendant's announcement to the membership of Plaintiff's removal from the Board was met with loud  protests and complaints about the Board's actions on social media.

85. After RRC members demanded an explanation for the decision, RRC published a second announcement on April 3, 2023, which gave an additional explanation, which included the following statement:

The Board 's actions were taken at a properly noticed meeting in which Ms. Ruggeroli was present with her legal counsel and given an opportunity to question a witness and address the Board as she and her counsel desired. No limitations were placed on Ms. Ruggeroli or her counsel. Ms. Ruggeroli was then, by a properly approved motion, recused from deliberations **because the matter concerned her actions**, and she had a conflict of interest in its resolution. The Board then deliberated the matter fully and unanimously decided to make a change in leadership in the best interest of the Council. Ms. Ruggeroli was fully informed of why this action was taken and was offered the courtesy to resign before it took effect and to help shape a public announcement of the transition, neither of which she chose to do. (emphasis added)

86. On April 7, 2023 RRC issued a "Follow-Up Statement" to its members that Plaintiff "was recused from deliberations because the matter concerned **her actions**". (emphasis added)

87. The Follow-Up Statement included a Q&A with inaccurate information provided to the members.

88. On April 7, 2023 RRC CEO Hornberger issued a "CEO Statement" to the members stating there were "media reports" they would not comment on, yet CEO Hornberger was contacted by Inman News before they published an online and email article on April 5, 2023.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

89.    At the Past Presidents meeting that took place on or around April 6, 2023, RRC CRS, agent, and  Past President Alex Milshteyn repeated to the Past Presidents his false allegations of misconduct by Plaintiff and that she laughed off allegations of sexual harassment.

90.    Defendant chose to shift blame for its own self-imposed legal troubles, and instead focused on Plaintiff by falsely implying to its membership that Plaintiff was to blame for Defendant's own dysfunction, legal troubles, and internal issues as well as their failure to follow the policies and procedures in their Employee Handbook.

91.    Defendant and its agents published false statements about Plaintiff to the RRC membership and has refused to retract them upon request.

92.    The false and defamatory statements were republished to the almost two million members of NAR.

93.    Defendant's false statements affected Plaintiff's reputation personally and professionally.

94.    Defendant refuses to recognize Plaintiff as a Past President, thereby depriving her of the economic and professional benefits that the title and status carry with it.

95.    Defendant RRC and its agents continue to publish false and defamatory statements about Plaintiff. For example, Board member Addie Owens ("Owens")

-17-

recently told an RRC member at an RRC event that Plaintiff had been removed because of "sexual harassment," clearly implying that Plaintiff had sexually harassed another.

96.    Another RRC Regional Vice President has repeated multiple times to RRC members that Plaintiff was "accused of a sexual harassment claim," and that claimed her supports were somehow "condoning sexual harassment."

97.    Coming from an RRC Regional Vice President and a Board member, the republication of the false allegations about Plaintiff by the RRC Regional Vice President and Owens were made with apparent authority of RRC.

98.    On information and belief, RRC agents Milshteyn, Woodward, Nekota, and Owens continue to publish false and defamatory statements about Plaintiff.

99.    Defendants' false and malicious defamatory statements have caused actual and pecuniary harm to Plaintiff, including loss of travel benefits and loss of referrals and the corresponding income that would come from the referrals.

## COUNT ONE
**(Defamation Per Se)**

100.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

101.    Defendant and its agents made defamatory statements about Plaintiff concerning alleged actions she took in her professional capacity.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

102.    These false statements impeached Plaintiff's honesty, integrity, virtue, and reputation within the real estate community – a community of which Plaintiff has been an active and integral member and leader for over twenty years.

103.    Defendant's and its agents' published statements that Plaintiff's reaction to allegations of sexual harassment was to respond: "Oh Gee, that is so funny" are on their face defamatory per se because an allegation that Plaintiff tolerates and laughs about sexual discrimination, on its face and stripped of innuendo and extrinsic facts, impugns Plaintiff's honesty, integrity, and reputation.

104.    Defendant's and its agents' statements about Plaintiff regarding alleged sexual harassment by her and/or her tolerance of sexual harassment are per se defamatory because they constitute a violation of the National Association of Realtors Code of Ethics.

105.    As a result of the defamation per se, Plaintiff's damages are presumed.

106.    Defendant's defamation was carried out with an evil hand guided by an evil mind, with the intent to defame Plaintiff and with a conscious disregard of an unjustifiable risk of significant harm to Plaintiff such that Plaintiff is entitled to an award of punitive damages against Defendant.

107.    The defamatory statements by Defendant and its agents have caused Plaintiff to suffer damages including severe emotional distress, difficulty, and/or an

inability to sleep, eat, and enjoy life, and a loss to her reputation in her professional community.

## COUNT TWO
### (Defamation)

108. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

109. Defendants published false and defamatory statements concerning Plaintiff.

110. Defendants' statements harmed Plaintiff's reputation for honesty, integrity, and virtue, and otherwise brought Plaintiff into disrepute.

111. Defendants knew these statements to be false or acted with reckless disregard as to the truth or falsity of the statements.

112. Despite knowing or having reckless disregard for the truth, Defendants published further false and defamatory statements regarding Plaintiff.

113. The defamatory statements by Defendant and its agents has caused Plaintiff to suffer damages including severe emotional distress, difficulty and/or an inability to sleep, eat, and enjoy life, and a loss to her reputation in her professional community.

114. The defamatory statements by Defendant and its agents has caused Plaintiff to suffer special damages including but not limited to loss of income from referrals by those who have heard the defamatory statements, failure to realize a

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

reasonable expectation of gain, as the denial of real estate listings and the withdrawal of RRC's invitation to Plaintiff to travel as RRC's representative at RRC's expense which, but for the currency of the slander, Plaintiff would have received.

## COUNT THREE
### (False Light/Invasion of Privacy)

115.   Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

116.   Defendant published false statements about Plaintiff with knowledge of the statements' falsity, or with reckless disregard for the truth of the statements.

117.   Defendant's false statements were those that a reasonable person would find highly offensive.

118.   The false statements published by RRC and its agents to the RRC Board and RRC members that Plaintiff's reaction to allegations of sexual harassment was to respond: "Oh Gee, that is so funny" and/or that Plaintiff has engaged in sexual harassment would be found to be highly offensive to a reasonable person.

119.   The implication of the statements by RRC and its agents was that Plaintiff happily tolerated and laughed at mistreatment of women, which is false.

120.   The false statements published and republished by RRC and its agents to the RRC Board and RRC members that Plaintiff's reaction to allegations of sexual harassment was to respond: "Oh Gee, that is so funny" and/or that Plaintiff has engaged

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

in sexual harassment involved major misrepresentations of Plaintiff's character, history, activities, and beliefs.

121.   The statements by RRC and its agents were published to so many people that the matter was substantially certain to become one of public knowledge, and in fact did become matters of public knowledge as word of his falsehoods spread throughout the RRC and NAR community.

122.   RRC republished the falsehoods to NAR and suggested to NAR that it should withdraw Plaintiff from her appointment to the NAR RPAC Committee based on the false allegations that are the basis of Plaintiff's defamation claim.

123.   Plaintiff was damaged as a result of Defendant's conduct, including loss of income, loss of promised travel benefits for RRC, loss of elected position as President of RRC, severe emotional distress, difficulty, and/or an inability to sleep, eat, and enjoy life, and a loss to her reputation in her professional community.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant as follows:

A.   For general damages in an amount to be determined at trial;

B.   For special damages in an amount to be determined at trial;

B.   For punitive damages;

C.   For such other relief as the Court may deem appropriate.

-22-

DATED this 11th day of November, 2024.


                    UDALL LAW FIRM, LLP


                    By *s/ Cassandra Meynard*
                        Cassandra Meynard
                        Craig Cline
                        *Attorneys for Plaintiff*

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

-23-

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

## CERTIFICATE OF SERVICE

Original electronically filed and copies of the foregoing served via the Court's CM/ECF Notification System on November 11, 2024, on all Electronic Case Filing Participants that have appeared in the above-captioned case, or U.S. Mail to parties not registered through CM/ECF:

Schoenberg Finkel Beederman Bell Glazer LLC
300 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
Telephone: (312) 648-2300
Fax: (312)648-1212
Adam J. Glazer ( Pro Hac Vice Application to be submitted)
Andrew Johnson ( Pro Hac Vice Application to be submitted)
Phillip J. Zisook ( Pro Hac Vice Application to be submitted)
Adam.Glazer@sfbbg.com
Andrew.Johnson@sfbbg.com
Phillip.Zisook@sfbbg.com

JACKSON LAW OFFICE, PLLC
1670 East River Road, Suite 260
Tucson, Arizona 85718
Telephone: (520) 884-0024
Facsimile: (520) 884-0025
TODD JACKSON ASB No. 012202
TJACKSON@GTJLEGAL.COM