# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Ruggeroli,<br><br>    Plaintiff,<br><br>v.<br><br>Residential Real Estate Council,<br><br>    Defendant. | No. CV-23-00259-TUC-JAS<br><br>**ORDER** |

Before the Court is a Motion to Dismiss Plaintiff Pamela Ruggeroli's Second Amended Complaint filed by Defendant Residential Real Estate Council ("RRC"). (Doc. 31.) Plaintiff asserts three state law claims: (1) defamation *per se*, (2) defamation *per quod*, and (3) false light invasion of privacy. (Doc. 30 at 18-22.) RRC argues that pursuant to Rule 12(b)(6), Fed. R. Civ. P., Plaintiff has failed to state any claim upon which relief can be granted. (Doc. 31 at 1.) For the following reasons, RRC's Motion To Dismiss (Doc. 31) is granted in part and denied in part.[1]

## Background

RRC previously filed a Motion to Dismiss Plaintiff's Initial Complaint for lack of personal jurisdiction and failure to state a claim upon which relief could be granted. (Doc. 11.) The Court partially granted and partially denied the Motion finding (1) it can exercise personal jurisdiction over RRC, (2) Plaintiff did not state a plausible claim for defamation

---

[1] RRC requested oral argument on the Motion to Dismiss. (Doc. 31 at 1.) Because the Court does not believe oral argument will assist its resolution of the Motion to Dismiss, the request is denied. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b).

*per se* because the alleged statements were not facially defamatory, (3) Plaintiff did not state a plausible claim for defamation *per quod* because she did not plead special damages, and (4) Plaintiff properly plead a false light invasion of privacy claim which could not be dismissed on qualified privilege grounds.  (Doc. 25 at 17-18.)

While RRC's Motion to Dismiss was pending, Plaintiff filed a First Amended Complaint which RRC moved to strike.  (*See* Docs. 19 and 20.)  After the Court ruled on the Motion to Dismiss, the Court granted Plaintiff leave to amend in part.  (Doc. 26 at 5); *see* Fed. R. Civ. P. 15(a)(2).  Specifically, the Court allowed Plaintiff to amend her defamation *per se* claim to resolve the deficiencies in the Initial Complaint, but not her defamation *per quod* claim.  (Doc. 26 at 6; *see also* Doc. 27.)  RRC then moved to dismiss the First Amended Complaint (Doc. 28) and in response Plaintiff filed a Second Amended Complaint pursuant to Rule 15(a)(1).  (*See* Docs. 29 and 30.)  RRC's Motion to Dismiss the Second Amended Complaint is now before the Court.[2]  (Doc. 31.)

"When ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).  The Court therefore "draws all reasonable inferences in favor of the plaintiff." *Id*.

In the Second Amended Complaint, Plaintiff alleges that she is a Realtor and Certified Residential Specialist (CRS) in Tucson, Arizona.  (Doc. 30 ¶ 5.)  RRC is a foreign nonprofit corporation with approximately 28,000 Realtor members.  (*Id.* ¶¶ 2, 6.)  A Realtor earns the CRS designation through education provided by RRC.  (*Id.* ¶ 7.)

In 2021, Plaintiff became First Vice President of RRC's Board and Chair of the

---

[2]Because RRC's Motion to Dismiss the Second Amended Complaint was pending, the Court denied RRC's Motion to Dismiss the First Amended Complaint as moot.  (Doc. 34.)  The Ninth Circuit Court of Appeals had held that "Rule 15 provides different ways to amend a complaint, and these ways are not mutually exclusive.  Rule 15 is organized substantively, not chronologically.  It does not prescribe any particular sequence for the exercise of its provisions." *Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1007 (9th Cir. 2015).  Therefore, Rule 15 "does not mandate that the matter of course amendment under 15(a)(1) be exhausted before an amendment may be made under 15(a)(2), nor does it state that the ability to amend under 15(a)(1) is exhausted or waived once a 15(a)(2) amendment is made." *Id.*

Finance Committee. (Doc. 30 ¶¶ 10-11.) Plaintiff was then expected to enter a cycle of leadership that automatically progresses each year: President Elect, President, and Immediate Past President. (*Id.* ¶ 10.) During her service as First Vice President, Plaintiff "became aware of irregularities in the financial statements prepared by [RRC's] Chief Financial Officer ('CFO') at the time." (*Id.* ¶ 12.)

Around November 14, 2021, RRC's Chief Executive Officer ("CEO") informed the then-Board President, Alex Milshteyn, that one of RRC's staff members had alleged that Plaintiff's partner, Mr. Savard, had sexually harassed the staff member during an RRC awards event. (*Id.* ¶¶ 13, 15.) Milshteyn, who was not present at the event, repeated to Plaintiff and others that he had heard that Savard had said that he wanted to "stick his tongue down [the staff member's] throat." (*Id.* ¶¶ 16-17.) "Beginning in November 2021 and continuing throughout at least 2023, Milshteyn published to RRC, the Board, and to others the false allegation that Plaintiff's reaction to the false allegation against Savard was to respond: 'Oh Gee, that is so funny.'" (*Id.* ¶ 18.)

The staff member later contacted Plaintiff and told her that she had not made a complaint, and that the CEO had fabricated the allegation to remove Plaintiff from the Board due to her investigation into RRC's financial statements. (*Id.* ¶ 23.) Plaintiff confirmed with RRC's Interim CEO and CFO that there was no documentation of any allegation by the staff member of sexual harassment against Savard. (*Id.* ¶ 29.) Despite there being no complaint or investigation, RRC and Milshteyn continued to republish repeatedly that "Plaintiff tolerated—and was even amused by—alleged sexual harassment of staff by her partner." (*Id.* ¶¶ 21-22, 26-29.)

Milshteyn told Plaintiff and others that Savard would no longer be able to attend RRC's events. (*Id.* ¶ 22.) In Spring 2022, the then-Board President told Plaintiff she could bring Savard to an RRC reception organized by the National Association of Realtors ("NAR") in the Bahamas.[3] (*Id.* ¶¶ 15, 30-32.) In November 2022, RRC's counsel told Plaintiff that Savard would be barred from attending Plaintiff's induction ceremony as

---

[3]RRC and NAR are distinct organizations. (Doc. 30 ¶ 41.)

President of the Board. (*Id.* ¶ 38.) Savard did not attend the induction ceremony. (*Id.* ¶ 39.)

In March 2023, Plaintiff and Savard attended a NAR conference in Cancun, Mexico. (*Id.* ¶ 40.) While at the conference, Plaintiff attended an unofficial happy hour for RRC's members and their guests. (*Id.* ¶ 42.) Savard also attended at the invitation of other members. (*Id.* ¶ 46.) Plaintiff did not invite or interact with Savard at the happy hour. (*Id.* ¶¶ 45, 47.)

Nevertheless, RRC's board members accused Plaintiff of misconduct by bringing Savard to the happy hour and secretly met with RRC's counsel to discuss removing Plaintiff from the Board. (*Id.* ¶¶ 48-50.) The then President-Elect subsequently presented Plaintiff with a pre-written statement which included the misconduct allegation and three options: resign, serve in a limited ceremonial role, or take the matter up with the Board. (*Id.*)

At a Special Meeting, which Plaintiff was not properly notified of and not admitted to until twenty minutes after it had begun, a Board Member republished the allegations that Plaintiff had engaged in misconduct. (*Id.* ¶¶ 53-55.) The following day, Plaintiff was notified that the Board had voted to restrict all her duties and responsibilities as President. (*Id.* ¶ 56.) The Board did not tell Plaintiff the reason for the removal of her duties, but implied that it was because Plaintiff had engaged in misconduct at the conference by bringing Savard to the happy hour. (*Id.* ¶ 59.)

After Plaintiff notified the Board that she had not been properly noticed of the first Special Meeting, RRC called a second Special Meeting with a statement publicly announcing to the board members that "[t]he purpose of the meeting is to discuss the actions of an officer and possible ramifications." (*Id.* ¶¶ 61-62.) Before the second Special Meeting, Plaintiff submitted four written statements from five RRC members confirming that they—not Plaintiff—had invited Savard to the happy hour. (*Id.* ¶ 65.) Plaintiff asserts that not only did she not invite Savard, but she also asked him not to attend. (*Id.* ¶ 66.) The Board voted to remove Plaintiff from her position as President and member of the Board. (*Id.* ¶ 80.)

RRC subsequently issued two public announcements, one on April 3, 2023 and one on April 7, 2023, to its approximately 28,000 members regarding Plaintiff's removal from the Board noting that Plaintiff had been "recused from deliberations because the matter concerned her actions." (*Id.* ¶¶ 6, 83-86.) Plaintiff requested RRC and its agents retract the statements, but they refused to do so. (*Id.* ¶ 91.) Plaintiff alleges the statements were republished to almost two million NAR members. (*Id.* ¶ 92.) She further alleges that RRC refuses to recognize her as a Past President, which has deprived her of economic and professional benefits. (*Id.* ¶ 94.) Additionally, the statements have caused her actual and pecuniary harm including loss of travel benefits and referrals. (*Id.* ¶ 99.)

**Discussion**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient to state a facially plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

I. **Count One: Defamation *Per Se***

RRC argues that Plaintiff's Second Amended Complaint fails to state a facially plausible claim for defamation *per se*. (Doc. 31 at 7-11.) RRC argues that absent extrinsic facts, its publications that Plaintiff was "recused from deliberations because the matter concerned her actions" are not defamatory. (*Id.* at 7.) RRC further argues Plaintiff cannot impute interpretations of oral statements of its officers to it. (*Id.* at 9-11.) Plaintiff responds that RRC's publications do not need extrinsic facts to be understood as defamatory and that RRC's officers were acting as its agents when they made statements that were defamatory *per se*. (Doc. 32 at 6-7.)

To constitute defamation in Arizona, "a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's

- 5 -

honesty, integrity, virtue, or reputation." *Rogers v. Mroz*, 252 Ariz. 335, ¶ 2 (2022) (quoting *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)). Substantial truth is a complete defense to defamation claims. *Read v. Phx. Newspapers, Inc.*, 169 Ariz. 353, 355 (1991). A statement is substantially true even if it has "slight inaccuracies" if the "gist" of the statement is true. *Id.* (quoting *Heuisler v. Phx. Newspapers, Inc.*, 168 Ariz. 278, 285 n. 4 (App. 1991)).

A statement constitutes defamation *per se* if it is facially defamatory without the need for extrinsic facts. *Ilitzky v. Goodman*, 57 Ariz. 216, 220-21 (1941). When determining whether a statement is defamation *per se*, courts "look to the language alone." *Cent. Ariz. Light & Power Co. v. Akers*, 45 Ariz. 526, 536 (1935). If an inference is required to derive the defamatory meaning, the statement cannot be defamatory *per se*. *See id.*

### A. Statements by RRC

RRC's publications that Plaintiff had been "recused from deliberations because the matter concerned her actions" (Doc. 30 ¶¶ 85-86), are not, without inference, defamatory. Plaintiff argues that the statement is false in saying the matter regarded "her actions" because she had proven she had no part in the "complained of act—Savard coming to a happy hour." (Doc. 32 at 6.) But even taking as true that the statement regarding her "actions" was false, to constitute defamation, the publication must also "bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Rogers*, 252 Ariz. 335, ¶ 2. As the Court previously concluded, "[b]ecause there is no facially negative quality to the phrase 'her actions' and [it] instead requires an inference to be harmful, the statement cannot be part of a defamation *per se* claim." (Doc. 25 at 12.)

The Court also previously determined that Plaintiff had stated a claim for defamation *per se* in her First Amended Complaint because she alleged that RRC had "falsely told others that Savard's presence at the unofficial reception constituted misconduct by Plaintiff." (Doc. 26 at 4; *see also* Doc. 19-1 ¶ 49; Doc. 27 ¶ 44.) The Court concluded that, "If assumed true, a false statement from Defendants that Plaintiff

- 6 -

committed some wrongdoing is facially defamatory."[4]  (Doc. 26 at 4-5.)  This allegation, specifically against RRC, is notably absent from Plaintiff's Second Amended Complaint. (*See* Doc. 30 ¶¶ 48, 73 (alleging that only Milshteyn told others that "Savard's presence at the unofficial happy hour constituted misconduct by Plaintiff").)

Rather, the only allegation of a direct publication from RRC, aside from the publications regarding Plaintiff's "actions" discussed above, is that RRC repeatedly republished Milshteyn's view that "Plaintiff tolerated—and was even amused by—alleged sexual harassment of staff by her partner."  (Doc. 30 ¶¶ 26-28.)  Later in the Complaint, however, Plaintiff alleges that the "implication of [Milshteyn's] statements was that Plaintiff happily tolerated and laughed at the mistreatment of women, which is false."  (*Id.* ¶ 77.)  Again, when determining if a statement is defamatory *per se*, the Court looks to the language alone.  *Cent. Ariz. Light & Power Co.*, 45 Ariz. at 536.  "[W]ithout knowing the precise language of the statement allegedly uttered, the court cannot analyze whether the statement is objectively verifiable as true or false—a critical question in determining whether a defamation action may lie."  *BLK III, LLC v. Skelton*, 252 Ariz. 583, ¶ 15 (App. 2022).  Here, there is no allegation of precise language used by RRC, and any defamatory meaning is alleged to be derived from implication.  *See Cent. Ariz. Light & Power Co.*, 45 Ariz. at 536.  This cannot support a claim for defamation *per se*.  *See id.*

### B. Statements by RRC's Agents

Plaintiff alleges that RRC's agents made statements that were defamatory *per se* and that RRC is liable for such statements because they were made with the "apparent authority of RRC."  (Doc. 30 ¶¶ 97-98; *see also* Doc. 32 at 7.)  Specifically, Plaintiff alleges that: (1) Milshteyn "published to RRC, the Board, and to others the false allegation that Plaintiff's reaction to the false allegation against Savard was to respond: 'Oh Gee, that is so funny.'"[5]  (Doc. 30 ¶ 18; *see also* ¶ 27); (2) Milshteyn falsely told RRC agents and

---

[4]At the time, the Court's use of "Defendants" referred to both RRC and Milshteyn.  (Doc. 26 at 1.)  However Milshteyn was dismissed from the action, so the Order was moot as to him.  (*Id.* n.1.)

[5]Similarly, Plaintiff alleges that other RRC board members "republished" that "Plaintiff laughed off the allegation that her partner wanted to 'stick his tongue down' a staff

republished to RRC's members that "Savard's presence at the unofficial happy hour constituted misconduct by Plaintiff, and that Plaintiff had laughed off allegations of sexual harassment of staff" (*Id.* ¶ 48); (3) Milshteyn "told others that Plaintiff was engaging in misconduct by 'bringing' Savard to the happy hour such that her alleged misconduct was 'a slap in the face' to him and to his authority on behalf of RRC" (*Id.* ¶ 44; *see also* ¶¶ 27, 73, 78); (4) the RRC President Elect had published to the leadership team the accusation that Plaintiff had committed misconduct by bringing Savard to the happy hour (*Id.* ¶ 50; *see also* ¶ 48); (5) RRC's new CEO republished to board members that Plaintiff had engaged in misconduct in violation of RRC requirements (*Id.* ¶ 55; *see also* ¶ 37); (6) RRC Regional Vice President repeated several times that Plaintiff was "accused of a sexual harassment claim" (*Id.* ¶ 96); and (7) a current RRC board member told another RRC member that Plaintiff had been removed from her leadership position because of "sexual harassment." (*Id.* ¶ 95.) For ease of reference, the Court refers to these statements as Statements One through Seven in the analysis below.

      **i.**    **Statements One, Six, and Seven**

RRC argues that because it was the recipient of some of the statements alleged above, it cannot be liable for defamation on those statements. (Doc. 31 at 9.) To succeed on a defamation claim, Plaintiff must prove that RRC "published" a false and defamatory communication about her. *See Dube v. Likins*, 216 Ariz. 406, ¶ 36 (App. 2007). "Publication for defamation purposes is communication to a third party." *Id.* Thus, to the extent Plaintiff alleges in Statement One that Milshteyn published the allegations *to* RRC, RRC cannot be liable that statement. (Doc. 30 ¶ 18); *see Dube*, 216 Ariz. 406, ¶ 36. And regardless of who the statement was published to, the Court disagrees that it can support a claim for defamation *per se*. The allegation in Statement One is that Milshteyn published that Plaintiff's reaction to the allegation that Savard had said that he wanted to "stick his tongue down [the staff member's] throat," was to respond, "Oh Gee, that is so funny." (Doc. 30 ¶¶ 17-18.) Plaintiff asserts that the statement is defamatory on its face because

---

member's throat." (Doc. 30 ¶ 74.)

"an allegation that Plaintiff tolerates and laughs about sexual discrimination, on its face and stripped of innuendo and extrinsic facts, impugns Plaintiff's honesty, integrity, and reputation." (Doc. 30 ¶ 103.) By Plaintiff's own argument, for the statement to be defamatory, the recipient must make the inference that Plaintiff's response of "Oh Gee, that is so funny" means that "Plaintiff tolerates and laughs about sexual discrimination." (Doc. 30 ¶ 103). Although this may be a reasonable inference, it is not clear from the face of the statement. Again, if inference is required to derive the defamatory meaning, the statement cannot be defamatory *per se*. *See Cent. Ariz. Light & Power Co.*, 45 Ariz. at 536.

Similarly, Plaintiff alleges that Statements Six and Seven above constitute defamation *per se* because they imply that Plaintiff had sexually harassed another. (Doc 32 at 7; *see also* Doc. 30 ¶¶ 95-96.) Consistent with the Court's conclusion in its prior Order, the statements require an implication to be understood as defamatory and they cannot constitute defamation *per se*. (Doc. 25 at 12 ("Unlike the example of a *per se* defamatory statement in *Ilitzky* that 'X murdered Y,' the board member did not directly state that Plaintiff sexually harassed someone. Rather, as Plaintiff stated in the Complaint, the Court finds it plausible that the board member's statement could be interpreted to 'imply' that Plaintiff sexually harassed another. Because the statement is plausibly defamatory because of its implication, it cannot be facially defamatory . . . .")

### ii. Statements Two, Three, Four, and Five

RRC additionally argues that the statements of its agents cannot be imputed to it because under the doctrine of respondeat superior, the statements were not made in furtherance of RRC's business or within the scope of the agency relationship. (Doc. 31 at 9-11.) Plaintiff, on the other hand, argues that there was an agency relationship between RRC and its officers and that this is an issue of fact which cannot be resolved on a motion to dismiss. (Doc. 32 at 14-15.)

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

- 9 -

consents so to act." *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 28 (App. 2007) (quoting Restatement (Third) of Agency § 1.01 (2006)). A principal can be held vicariously liable for the tortious acts of its agent. *See Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, ¶ 9 (2018). An agency relationship can arise from actual or apparent authority. *Ruesga*, 215 Ariz. 589, ¶ 28. Plaintiff alleges RRC's agents had apparent authority to act on behalf of RRC. (Doc. 30 ¶ 97.) "[A]pparent authority exists when 'the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent.'" *Ruesga*, 215 Ariz. 589, ¶ 29 (quoting *Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 208 Ariz. 557, ¶ 30 (App. 2004)). It can never "be derived from the acts of the agent alone." *Reed v. Gershweir*, 160 Ariz. 203, 205 (App. 1989).

Respondeat superior is a specific type of vicarious liability that arises when an agent is employed by a principal "who controls or has the right to control the physical conduct of the other." *Alosi v. Hewitt*, 229 Ariz. 449, ¶¶ 33-34 (App. 2012) (quoting Restatement (Second) of Agency § 2 (1958)); *see also Baker ex rel. Hall Brake Supply, Inc. v. Steward Title & Tr. of Phx., Inc.*, 197 Ariz. 535, ¶ 17 (App. 2000) ("An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment."). There does not need to be a traditional employer-employee relationship for respondeat superior to apply— "[o]ne who volunteers services without an agreement for or expectation of reward" may qualify as an agent under this type of vicarious liability. *Scottsdale Jaycees v. Superior Court*, 17 Ariz. App. 571, 574 (1972) (quoting Restatement (Second) of Agency § 225 (1958)) (non-profit consented to member acting as a volunteer delegate to State Board Meeting and thus the volunteer was an agent "in the realm of Respondeat superior"). For conduct to be subject to respondeat superior, it must be "the kind [of conduct] the employee is employed to perform, … occur[] within the authorized time and space limits, and further[] the employer's business even if the employer has expressly forbidden it." *Baker*, 197 Ariz. 535, ¶ 17.

Taken as true, Plaintiff's allegations that current or past RRC board members published that Plaintiff had committed misconduct are, at this stage, actionable against

RRC under an agency theory. First, as explained above, statements which falsely state that Plaintiff had committed misconduct, "[i]f assumed true . . . [are] facially defamatory and therefore provide[] a factual basis for a defamation per se claim." (Doc. 26 at 4-5.) Second, Plaintiff explicitly alleges that when these statements were made, the individuals were "acting as . . . agent[s] of RRC." (Doc. 30 ¶¶ 27; *see also* ¶¶ 48, 73, 78, 95, 98.) And in each of the statements the publisher of the statement was either the RRC CEO, a board member, or a past board member still involved with RRC. (*See id.* ¶¶ 13-14, 44, 48, 73 (Milshteyn); ¶¶ 48, 50 (President Elect); ¶¶ 37, 55 (CEO).) Moreover, these statements were allegedly made to other RRC agents or members who were aware, or made aware, of the speaker's position with RRC or the statements were made during board or leadership team meetings specifically discussing the status of Plaintiff's position in RRC. (*Id.* ¶¶ 44, 48, 50, 55); *see Reed*, 160 Ariz. at 205 ("when dealing with apparent authority, the emphasis shifts to the third party's reliance on the acts of the alleged principal and the agent as opposed to any express or implied grant by the principal"). Therefore, as to Statements Two, Three, Four, and Five, Plaintiff has sufficiently alleged defamation *per se* based on apparent authority to survive RRC's Motion to Dismiss. Accordingly, Plaintiff's defamation *per se* claim in Count One of the Second Amended Complaint is partially dismissed and partially survives as described above.

**C. Count Two: Defamation *Per Quod***

Unlike defamation *per se*, defamation *per quod* includes statements that require knowledge of "certain surrounding circumstances" to constitute defamation. *Ilitzky*, 57 Ariz. at 221. And in a defamation *per se* claim damages are presumed, but in a defamation *per quod* claim, damages must be "specially alleged and proved." *Id.*; *see also Modla v. Parker*, 17 Ariz.App. 54, 56 (1972).

As observed in the Court's prior Order, many of Plaintiff's allegations provide facts sufficient to support a defamation *per quod* claim. (Doc. 25 at 12-13.) For example, RRC's publication that Plaintiff was "recused" due to "her actions," an RRC board member's statement that Plaintiff was removed due to "sexual harassment," and allegations from

- 11 -

1 RRC's board members that Plaintiff invited Savard to events (with knowledge that the
2 invitation was in violation of prior directives) could plausibly, and falsely, imply
3 wrongdoing or misconduct. (*Id.*)

4 The Court also previously concluded, however, that Plaintiff did not plead special
5 damages. (Doc. 25 at 13.) This required dismissal of the defamation *per quod* claim and
6 the Court did not grant Plaintiff leave to amend it. (*Id.*; Doc. 26 at 6.) But to the extent
7 Plaintiff is permitted to amend the defamation *per quod* claim as of right, *see* Rule
8 15(a)(1)(B), Fed. R. Civ. P., she has still failed to sufficiently plead special damages.

9 Special damages are "actual pecuniary losses" which must be specially pleaded and
10 proven. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 295 (2012); *see also Ilitzky*, 57
11 Ariz. at 223; *Berg v. Hohenstein*, 13 Ariz.App. 583, 585 (1971). In her Second Amended
12 Complaint, Plaintiff alleges "loss of income [and] loss of promised travel benefits for
13 RRC" and "loss of income from referrals by those who have heard the defamatory
14 statements." (Doc. 30 ¶¶ 57, 99, 114, 123.) But these assertions are unsupported by factual
15 allegations showing actual pecuniary loss. (*See id.*)

16 As an example of properly pleaded allegations of special damages, this Court looks
17 to the Arizona Supreme Court's opinion in *Ilitzky*. 57 Ariz. at 223. There, plaintiff had
18 alleged that he had open accounts with $461.11 due, and the customers refused to pay on
19 the accounts because defendants had sent letters implying that plaintiff had falsely and
20 wrongfully forged a contract. *Id.* at 218-220, 223. This additionally resulted in a loss of
21 further business in the amount of $750. *Id.* at 220. But unlike *Ilitzky*, the Second Amended
22 Complaint here does not plead a single specific instance of actual pecuniary loss. General
23 allegations of loss of income, referrals, and prospective travel benefits with no supporting
24 factual basis is insufficient to plead special damages. *See Blk III, LLC*, 252 Ariz. 583, ¶ 15
25 ("[C]onclusory statements are insufficient to state a claim upon which relief can be
26 granted." (quoting *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7 (2008)).
27 Accordingly, Plaintiff's defamation *per quod* claim in Count Two is dismissed.
28

**D. Count Three: False Light Invasion of Privacy**

The Court previously concluded that Plaintiff sufficiently stated a claim for false light invasion of privacy. (Doc. 25 at 13.) The allegation in the Second Amended Complaint that RRC twice published to its approximately 28,000 members that Plaintiff was "recused from deliberations because the matter concerned her actions" (Doc. 30 ¶¶ 6, 85-86) continues to support a false light invasion of privacy claim and RRC's Motion to Dismiss does not convince the Court otherwise.

To state a claim for false light, a plaintiff must allege that (1) the defendant publicized information placing the plaintiff in a false light, (2) the false light would be highly offensive to a reasonable person, and (3) defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter. *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 280 (App. 1997). "Publicity" means the matter is "communicate[d] to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge." *Id.* (Emphasis omitted). Even true statements can form the basis for a false light claim if they create a false implication. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, ¶ 29 (App. 2015). "Thus, the tort is established if the defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Hart*, 190 Ariz. at 280.

Plaintiff's Initial Complaint alleged that "RRC falsely published a statement to its approximately 28,000 members that Plaintiff was removed because of 'her actions.'" (Doc. 1-5 ¶ 59.) Plaintiff now pleads the actual language from RRC's publications in her Second Amended Complaint, alleging that RRC published that Plaintiff had been "recused from deliberations because the matter concerned her actions" and that because of deliberations the Board "decided to make a change in leadership." (Doc. 30 ¶¶ 85-86.) The Court does not view this change as material to the question of whether Plaintiff sufficiently pled false light. Consistent with the Court's prior Order, the Court still "finds it plausible RRC knew the implication of misconduct in the words 'her actions' was false; it is plausible RRC was aware Plaintiff had not invited Savard to the reception in Cancun—the grounds for the

removal—after Plaintiff provided RRC with letters from other RRC members that they had invited Savard." (Doc. 25 at 14-15.) Additionally, the statements were given sufficient publicity as they were published to approximately 28,000 RRC members, the innuendo of Plaintiff's misconduct in the statement was false, and the implication could be highly offensive. (*Id.* at 15.)

RRC argues Plaintiff's false light claim must nevertheless be dismissed because similar to the publication in *Hart*, RRC's publication did not "publicly reveal[] the reasons for [Plaintiff's] termination," 190 Ariz. at 280, and the claim is based instead on "rumor, gossip or conjecture." (Doc. 31 at 12.) But in *Hart* the Court focused not on the lack of "reasons" but instead found the false light claim failed because plaintiff had not shown "publicity" by defendant and instead asked the Court to "infer publicity" because of rumors in the community. *Id.* at 280-81. Here, unlike in *Hart*, Plaintiff has alleged that RRC published its statement to approximately 28,000 RRC members. (Doc. 30 ¶¶ 6, 83-86.) Such is sufficient to plead publicity in a false light invasion of privacy claim. *See Hart*, 190 Ariz. at 280 (publicity shown if statement made to large audience (quoting Restatement (Second) of Torts § 652D)).

And although the publications did not state the reason for Plaintiff's recusal and ultimate removal, as discussed in the Court's prior Order, the alleged communications could have implied that Plaintiff was ultimately removed for misconduct—which the Court cannot say as a matter of law is not highly offensive to a reasonable person. (Doc. 25 at 15); *see Hart* 190 Ariz. at 280 (innuendo can support false light claim). Contrary to RRC's argument, the claim is based on RRC's publications—not on "rumor, gossip or conjecture." (Doc. 31 at 12.)

RRC also argues Plaintiff's claim must fail because as former Board President of RRC she was a limited purpose public figure when the statements were made. (Doc. 31 at 14-16.) A claim for false light invasion of privacy cannot be established if Plaintiff "is a public official *and* the publication relates to performance of his or her public life or duties." *Godbehere*, 162 Ariz. at 343 ("the right of privacy does not exist 'where the plaintiff has

become a public character' . . . [and] privacy rights are absent or limited 'in connection with the life of a person in whom the public has a rightful interest, [or] where the information would be of public benefit'" (first alteration added, second alteration in *Godbehere*) (internal citation omitted) (quoting *Reed v. Real Detective Publ'g Co.*, 63 Ariz. 294, 304 (1945)). "[P]ublic figures may reach that status because of their position, their 'purposeful activity' in 'thrusting' themselves into matters of public controversy or their close involvement with the resolution of matters of public concern." *Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 483 (1986) (citing *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 130 Ariz. 523, 527 (1981)).

Whether a person is a public figure is a question of law for the court. *Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966); Restatement (Second) of Torts § 619 cmt. a. But "[i]f the facts are in dispute, the jury is called upon to consider the evidence and pass upon" the dispute of fact before the legal determination is made. Restatement (Second) of Torts § 619 cmt. a; *see also Khawar v. Global Int'l., Inc.*, 965 P.2d 696, 701 (Cal. 1998) ("the trial court's resolution of disputed factual questions bearing on the public figure determination is reviewed for substantial evidence, while the trial court's resolution of the ultimate question of public figure status is subject to independent review for legal error").

The Court previously determined that, "Although the statement had publicity, Plaintiff is not a public official, so RRC's statement about her and her removal relates to private affairs and is accordingly actionable for false light invasion of privacy." (Doc. 25 at 15.) RRC now relies on unpublished memorandum decisions from the Arizona Court of Appeals, in which the Court of Appeals concluded that candidates for a Homeowners Association ("HOA") Board and a member of a school board were limited purpose public figures. *See McCoy v. Hassen*, No. 1-CA-CV 21-0524, ¶¶ 21-25 (Ariz. App. Aug. 30, 2022); *McCoy v. Johnson*, No. 1-CA-CV 21-0676, ¶¶ 17-24 (Ariz. App. Dec. 8, 2022); *Hoenack v. Gannett Co.,* No. 1 CA-CV 23-0020, ¶¶ 10-13 (Ariz. App. Nov. 16, 2023). In *McCoy v. Hassen*, the Court of Appeals stated that the Plaintiffs had made "individual decisions to inject themselves into the public controversies that ultimately gave rise to the

alleged defamation" and that the Board's composition was "a matter of public concern to, at a minimum, the many [neighborhood] residents who are Association members and governed by the Board." No. 1-CA-CV 21-0524, ¶¶ 22-23. Other decisions have reached similar conclusions. *See, e.g.*, *Johnson*, No. 1-CA-CV 21-0676, ¶¶ 17-24 (Plaintiffs had "voluntarily injected themselves" into matters of concern of the neighborhood); *Marcus v. Mercer*, No. 1-CA-CV 06-0762, ¶¶ 2, 61 (Ariz. App. Apr. 17, 2008) (plaintiff, who was president of a corporation, and took "hundreds of trips" to fundraise had "injected" himself into fundraising matter which was "in the public eye, around the world" rendering him a public figure); *Agar v. Judy*, 151 A.3d 456, 478-79 (Del. Ch. 2017) (courts have held that "candidates who seek to be elected to lead organizations become limited public figures for purpose of communications related to the election"); *cf. Hoenack,* No. 1 CA-CV 23-0020, ¶¶ 10-11 (public reporting of plaintiff's request to conceal carry a gun on school property "related to his duties as a Board member" and was not actionable as false light invasion of privacy, in part, because he was a public official).

But these decisions are either unpublished or from jurisdictions other than Arizona. Moreover, many of these decisions dealt with quasi-public boards. *See Johnson*, No. 1-CA-CV 21-0676, ¶¶ 19, 22 (specifically noting that HOA boards differ from private business boards, and "although other [non-Arizona] caselaw suggests persons elected to private boards can . . . become limited purpose public figures," Court of Appeals rejected argument that the ruling implies that "any person who sits on any elected private board would be a 'limited public figure'"); *Hassen*, No. 1-CA-CV 21-0524 (HOA Board); *Hoenack,* No. 1 CA-CV 23-0020 (Ariz. App. Nov. 16, 2023) (school board).

At this stage, RRC has not conclusively established that Plaintiff is a limited purpose public figure. *See Dombey*, 150 Ariz. at 483 ("defining a public figure 'is much like trying to nail a jellyfish to the wall'" (quoting *Rosanova v. Playboy Enters., Inc.*, 411 F.Supp. 440, 443 (S.D. Ga. 1976)). Whether Plaintiff is a limited purpose public figure is somewhat of a close question and will be better resolved on a more detailed record. Therefore, Count Three survives the Motion to Dismiss.

**F. Statute of Limitations**

RRC also argues that the statements Plaintiff alleges occurred in 2021 are time-barred. (Doc. 31 at 11.) Additionally, that Plaintiff's new allegation in the Second Amended Complaint of a publication by RRC that occurred on April 7, 2023, is time-barred. (*Id.* at n.1.) Plaintiff responds that because the Second Amended Complaint relates back to the Initial Complaint, which was filed within the statute of limitations, RRC's publication on April 7, 2023, is not time-barred. (Doc. 32 at n.1.)

The Court has already determined in the analysis above that the statements Plaintiff has alleged occurred in 2021 do not form the basis for a cognizable claim. (*See* Doc. 30 ¶¶ 17-18, 28.) Therefore, the Court need not reach the statute of limitations argument, but in any event, the Court agrees with RRC that these statements are also time-barred. Defamation claims have a one-year statute of limitations, A.R.S. §12-541(1), and Plaintiff's Initial Complaint was filed on May 5, 2023. (Doc. 1-5.) Therefore, any conduct forming the basis for a defamation claim that accrued before May 5, 2022 is time-barred.

As to the new allegation in the Second Amended Complaint of an RRC publication that occurred on April 7, 2023, the Court agrees with Plaintiff that the Second Amended Complaint relates back to the Initial Complaint, and this allegation is not time-barred. Under Rule 15(c)(1)(B), Fed. R. Civ. P., "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." This standard ensures a balance between the protections offered by the statute of limitations and the opportunity to resolve claims on their merits. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1005 (9th Cir. 2014). Here, the newly alleged publication in the Second Amended Complaint is alleged as a "Follow-Up Statement" to the publication alleged in the Initial Complaint. (*See* Doc. 1-5, ¶ 59; Doc. 30 ¶ 86.) The new allegation therefore arises out of the same "conduct, transaction, or occurrence," Rule 15(c)(1)(B), and is not time-barred.

///

Accordingly, **IT IS ORDERED:**

1) RRC's Motion to Dismiss (Doc. 31) is **partially granted** and **partially denied**.
2) Count One of the Second Amended Complaint (Defamation *Per Se*) is partially dismissed and partially survives the Motion to Dismiss.
3) Count Two of the Second Amended Complaint (Defamation *Per Quod*) is dismissed.
4) Count Three of the Second Amended Complaint (False Light/Invasion of Privacy) survives the Motion to Dismiss.

Dated this 19th day of September, 2025.

Honorable James A. Soto
United States District Judge